J-E02001-17

2018 PA Super 130

| | | |
|---|---|---|
| IN RE:  ESTATE OF SOPHIA M. KRASINSKI A/K/A SOPHIA KRASINSKI A/K/A SOPHIA KRASINSKY LATE OF MORRISDALE (COOPER TOWNSHIP), CLEARFIELD COUNTY, PENNSYLVANIA DECEASED NOVEMBER 4, 2006 | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 1265 WDA 2015 |
| APPEAL OF: ESTATE OF SOPHIA M. KRASINSKI AND ITS EXECUTOR, EDWARD KRASINSKI | : : : | |

Appeal from the Order July 16, 2015
In the Court of Common Pleas of Clearfield County
Orphans' Court at No(s):  1707-0003

| | | |
|---|---|---|
| IN RE: ESTATE OF SOPHIA M. KRASINSKI, A/K/A SOPHIA KRASINSKI A/K/A SOFIA KRASINSKY, LATE OF MORRISDALE, (COOPER TOWNSHIP) CLEARFIELD COUNTY, PENNSYLVANIA DECEASED ON 11/04/06 | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 1289 WDA 2015 |
| APPEAL OF: PATRICIA KRASINSKI-DUNZIK | : : | |

Appeal from the Order July 16, 2015
In the Court of Common Pleas of Clearfield County
Orphans' Court at No(s):  No. 1707-0003

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

OPINION BY OTT, J.: **FILED MAY 15, 2018**

The Estate of Sophia M. Krasinski (the Estate) through its executor, Edward Krasinski (Edward or the Executor), appeals from the order entered on July 16, 2015, which granted in part and denied in part exceptions to the

order confirming the first and final account of the Estate. Patricia Krasinski-Dunzik (Patricia) also appeals from that order. Upon review, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

## I. Background

This matter arises from a dispute among siblings over the distribution of the real property from the Estate of their mother, Sophia M. Krasinski (the Decedent). The Decedent had four children: Patricia, who is married to Gary Dunzik (Gary) (collectively, the Dunziks); Eleanor J. Krasinski (Eleanor); James P. Krasinski (James); and Edward.

Decedent died testate on November 4, 2006, and the Will was probated and an Estate opened in 2007. Pursuant to the terms of her will, Edward was named as executor of the Estate and granted letters testamentary. The will directed that the Decedent's debts and funeral expenses be paid from the assets of the Estate, and that the residue of the Estate be left in equal shares to the Decedent's four children.

The primary assets of the Estate included three parcels of real estate.[1] Those parcels were: 1) 20 acres of property with an appraised value of

---

[1] The Executor did not obtain a date-of-death appraisal for the properties. Instead, the Executor had the properties professionally appraised in 2010 in conjunction with his petition for private sale. *See* N.T., 9/5/2014, at 62 ("appraisal done in 2010").

$55,000 (Johnny Hoover Place);[2] 2) a barn and 95 acres of property, which includes 68 acres of coal rights, with an appraised value of $230,000 (Wicks' Place);[3] and 3) a house, buildings, and 98.84 acres with an appraised value of $200,000 (Homestead Place).[4]

On July 7, 2010, Edward, in his capacity as Executor of the Estate, filed a petition to permit the private sale of real estate to heirs. In that petition, Edward averred that Patricia was objecting to the distribution of all three properties because it was her position she already owns all of them based on a prior oral agreement between herself and the Decedent. After argument and briefing, on March 22, 2011, the orphans' court granted the Executor's petition to permit private sale of the real estate. Specifically, the orphans' court concluded that Patricia did not produce a writing to satisfy the requirements of the statute of frauds to prove that she owned these properties. The orphans' court also concluded that Patricia did not present

---

[2] The tax-assessed value of this parcel was $6,798.10.

[3] The tax-assessed value for this parcel was $40,866.37. This property surrounds James's home. Johnny Hoover Place and Wicks' Place are adjoining properties.

[4] The assessed value for this parcel was $35,784.74. The Dunziks built the house and barn on Homestead Place and reside there. The proposed deeds for both Johnny Hoover Place and Homestead Place included a provision that a right of way be established from Johnny Hoover Place through Homestead Place to give Johnny Hoover Place access to the public road.

sufficient evidence to remove the purported oral contract from the statute of frauds.[5]

Prior to the sale, on February 8, 2013, letters were sent by the Estate's attorney to all four heirs explaining the process by which the sale would occur.[6] Included in this letter was a statement indicating that if the Dunziks did not purchase all of the property of Homestead Place, there would be steps taken to ensure they could maintain ownership of the home and barn on the property. *See* Plaintiff's Exhibit 30 (Estate's Attorney's Letter, 2/8/2013).

The private sale was conducted on February 15, 2013. Edward, James, and Patricia attended the sale.[7] Patricia did not bid on any of the properties.

_____

[5] The private sale was delayed further after the Dunziks filed a civil complaint against the Estate. On December 24, 2012, after a non-jury trial, the trial court found that there was no oral contract between the Decedent and Patricia and dismissed the case.

[6] The Estate's attorney's letter stated, *inter alia*, that all heirs were permitted to utilize their proportionate shares of the value of the Estate towards the purchase price of any property with any difference to be paid in cash upon approval by the orphans' court. The share of each heir was approximately $100,000.00. *See* Trial Court Opinion, 4/22/2015, at 3 n.2.

[7] Eleanor filed a document disclaiming her rights to the Estate and assigning her proportionate share to Patricia. Patricia appeared for the private sale, gave the Estate's attorney Eleanor's filing, said she would not be bidding as she owned the property, and then left immediately thereafter. *See* N.T., 9/5/2014, at 29, 71-22. *See also* Orphans' Court Opinion, 4/22/2015, at 2 ("The evidence presented before the Court showed that [Patricia] announced she was not going to remain at the sale. [Patricia] then provided a copy of a Relinquishment of Rights to Inherit signed by her sister Eleanor Krasinski and left [the Estate's attorney's] office while making various threats to stop the sale from going through.") (footnote omitted).

James and his wife, Marie, bid $230,000 for Wicks' Place. Edward bid $55,000 for Johnny Hoover Place. Edward, James, and Marie jointly bid $120,000 for Homestead Place.

On March 7, 2013, the Executor petitioned the orphans' court to approve the sale of these properties to the residuary heirs for these amounts. Contrary to the letter of the Estate's attorney, no provision for Patricia and her husband's ownership of the house and barn at Homestead Place was included in the deeds. On March 14, 2013, Patricia filed *pro se* an objection to the petition.[8] On April 30, 2013, after argument, the orphans' court approved the Executor's petition.

On May 30, 2014, the Executor filed a first and final account. Patricia, through counsel, filed six objections. Those objections challenged: 1) the manner in which the private sale was conducted; 2) the failure to include a limiting condition regarding the Dunziks' home and barn and underlying land in the Homestead Place deed; 3) the proposal to sell Homestead Place with a right-of-way from Johnny Hoover Place; 4) the appraised values of the

_____

[8] This handwritten objection, consisting of 5 pages with writing on both sides except for the last page, includes numerous allegations about how James and Edward treated Decedent while she was dying. Patricia also averred that Edward was taking payments for the gas leases and not giving them to the Estate. She further claimed both Edward and James assaulted her in the past. Additionally, she claimed she owned some mineral rights in the properties. Patricia did not specifically object on the basis that no provision was made for ownership of the lands underlying her house and barn at Homestead Place.

properties as either suppressed or inflated; and 5) tax implications related to the Executor's report to the Internal Revenue Service that Patricia sold her interest in the land, and the Executor's date of death valuation of the real estate. Objection No. 6 was a series of miscellaneous objections, and is discussed in section III, *infra*, as that objection relates solely to the Executor's appeal.

A hearing was held on all objections on September 5, 2014. Testimony and evidence were sparse at this hearing and the majority of the testimony did not relate to the objections filed by the Dunziks. Furthermore, Patricia did not appear; however, both her husband, Gary, and the Dunziks' attorney appeared.

On September 10, 2014, the orphans' court ordered Patricia to file a brief within 30 days, and also provided the Executor 20 days thereafter to respond. Patricia did not file a brief, but the Executor filed answers to the objections on October 27, 2014.

On April 22, 2015, the orphans' court entered an order and opinion in this matter. The orphans' court sustained, in part, Objection No. 6, finding that natural gas payments received by the Estate for Homestead Place in the amount of $39,536.00 were the property of Patricia and not the Estate, and directed the filing of an Amended Account to remove the $39,536.00 from the Estate. The orphans' court overruled the remaining objections. With respect to Objection Nos. 1 through 4, concerning the private sale of the properties,

the orphans' court concluded these issues were waived because they should have been raised in an appeal from the order confirming the private sale on April 30, 2013, pursuant to Pennsylvania Rule of Appellate Procedure 342(a)(6) (order "determining an interest in real … property" appealable as of right). As to Objection No. 5, tax ramifications, the orphans' court concluded that the Executor acted appropriately.

On May 4, 2015, Patricia filed a motion for reconsideration, contending, *inter alia*, the April 30, 2013 order approving the private sale was interlocutory; the Executor and James and his wife removed a significant amount of timber from Homestead Place; the party who sold the Decedent's real estate was the Executor, and not Patricia; and seeking a revised account that properly reflected the value of the land on the date of the Decedent's death as the appraised value, and retraction of improper tax filing.[9] On May 13, 2015, the orphans' court granted Patricia's motion for reconsideration and set argument on two issues. Those issues included: 1) whether the April 30, 2013 order was a final order, and 2) whether the value of timber removed

---

[9] A motion for reconsideration was procedurally improper in this case. At that time, the Pennsylvania Orphans' Court Rules provided for exceptions. **See** former Pa.O.C. Rule 7.1(a) ("[N]o later than twenty (20) days after entry of an order, decree or adjudication, a party may file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of exceptions[.]").

from the property was included properly in the account.[10] **See** Order, 5/13/2015. By order entered July 16, 2015, the orphans' court rescinded the May 13, 2015, order, construed Patricia's motion for reconsideration as exceptions, and dismissed those exceptions.[11] The orphans' court also dismissed the exceptions filed by the Executor concerning ownership of the gas and oil rights to Homestead Place.

The Executor timely filed a notice of appeal, and Patricia filed a cross appeal.[12] A divided panel of this Court affirmed the orphans' court's order in part, vacated in part, and remanded for further proceedings. Thereafter, Patricia sought *en banc* review, which this Court granted. The matter is now ready for our disposition.[13]

In considering both appeals, we bear in mind our well-settled standard of review.

> The [o]rphans' [c]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying

---

[10] The record is not clear as to when any issue about timber was raised for the first time.

[11] The record does not contain a transcript of a hearing, and it is not clear whether a hearing was actually held.

[12] The Executor, Patricia, and the orphans' court complied with Pa.R.A.P. 1925.

[13] On May 23, 2017, this Court issued a Rule to Show Cause (RTSC) to both parties, directing them to show cause as to the basis of this Court's jurisdiction over these appeals.

Based on the parties' responses to the RTSC, we are satisfied that this Court has jurisdiction and the RTSC is hereby discharged.

the correct principles of law. This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination. When we review questions of law, our standard of review is limited to determining whether the [orphans'] court committed an error of law.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (citations and quotation marks omitted). For ease of discussion, we begin with Patricia's appeal.

## II. Patricia's Appeal

We first consider Patricia's arguments related to the private sale of property that occurred on February 15, 2013. She argues that the orphans' court erred in permitting the private sale that only allowed the heirs to participate in the bidding because it "was never intended to and did not, in fact, maximize the value of the real estate for the benefit of all of the heirs[.]" Patricia's Brief at 13. Patricia also argues that she was not given adequate notice of the sale. *Id*. at 15. Patricia further contends that there was no need for the Executor to offer Homestead Place for sale with a right of way in favor of Johnny Hoover Place, except to serve as an impediment and deterrent to her and her husband's purchase of Homestead Place. *Id*. at 16-17. Patricia also argues that James and Edward "changed[d] the terms of the sale" of Homestead Place by failing to recognize ownership by Patricia and her husband of the home and barn, the lands underlying the home and barn, and the appurtenant facilities servicing them in the deed. *Id*. at 18.

The orphans' court concluded that Patricia waived these issues by failing to appeal from the April 30, 2013 order confirming and approving the private sale, as required by Pennsylvania Rule of Appellate Procedure 342. **See** Orphans' Court Opinion, 4/22/2015, at 8, *citing* Pa.R.A.P. 342(a)(6) and (c). As more fully discussed below, we agree with the orphans' court's determination.

Effective February 12, 2012, Pa.R.A.P. 342 provides, in relevant part:

(a) General rule. An appeal may be taken as of right from the following orders of the Orphans' Court Division: …

(6) An order determining an interest in real or personal property; ….

\*\*\*\*

(c) Waiver of objections. Failure to appeal an order that is immediately appealable under paragraphs (a)(1)-(7) of this rule shall constitute a waiver of all objections to such order and such objections may not be raised in any subsequent appeal.

Pa.R.A.P. 342(a)(6), (c).

At the outset, it is important to recognize that the Executor had the authority to sell the Decedent's real estate, pursuant to Sections 3311(a) and 3351 of the Probate, Estate and Fiduciaries (PEF) Code.[14]  Furthermore, the

---

[14] Specifically, Section 3311(a) of the PEF Code provides:

A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of

orphans' court authorized the Executor to sell the real estate by private sale to the heirs by order entered March 22, 2011. The private sale took place on February 15, 2013. Thereafter, on April 30, 2013, the orphans' court approved the sale and ordered the properties conveyed to the grantees. **See** Order, 4/30/2013.

By way of background to the adoption of current Rule 342, we begin with the Pennsylvania Supreme Court's decision in **In re Estate of Stricker**, 977 A.2d 1115 (Pa. 2009), which involved the **prior** version of Rule 342. In

---

> death by an heir or devisee with the consent of the decedent. He shall collect the rents and income from each asset in his possession until it is sold or distributed, and, during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it. The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir or a devisee if this is necessary to protect the rights of claimants or other parties. ***Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee***.

20 Pa.C.S. § 3311(a) (emphasis added). Additionally, Section 3351 states:

> ***Except as otherwise provided by the will, if any, the personal representative may sell, at public or private sale***, any personal property whether specifically bequeathed or not, and ***any real property not specifically devised***, and with the joinder of the specific devisee real property specifically devised. …

20 Pa.C.S. § 3351 (emphasis added).

- 11 -

*Stricker*, our Supreme Court held that an orphans' court's order directing the co-executors to sell the estate's real estate was an interlocutory order that was not appealable under Rule 342 or Rule 313 (collateral order). At that time, under Rule 342, the determination of the finality of an order "making a distribution, or determining an interest in realty or personalty or the status of individuals or entities" was left to the discretion of the orphans' court. *Stricker*, at 1117-1118. Because the orphans' court judge had not certified the order to sell the estate's real estate as final, the *Stricker* Court ruled the order was not appealable under Rule 342. The *Stricker* Court further determined the order did not qualify as a collateral order appealable pursuant to Rule 313. Therefore, the order of this Court quashing the appeal was affirmed.

> In a concurring opinion, Mr. Justice Saylor wrote:
>
> The majority aptly observes that our Rules of Appellate Procedure contain a vehicle to address the particularized concerns arising from orders determining interests in estate property. Specifically, Rule 342 permits an appeal from a distribution order or an order determining an interest in estate property to proceed as of right, *inter alia*, upon a determination of finality by the orphans' court. *See* Pa.R.A.P. 342(1). The majority correctly interprets the rule as investing absolute, largely standardless discretion in the orphans' court. I differ, however, with the majority's categorical assessment regarding the wisdom of the rule in this regard. *See* Majority Opinion, slip op. at 4.
>
> In my view, there are substantial arguments to be made that estate administration would be better served by a rule providing for the general appealability of estate-related orders determining property interests at least in the real property setting. Notably, the present "determination of finality" procedure does not closely align with the justifications for permitting immediate

appeals (facilitating the prompt resolution of potential title disputes to benefit purchasers, the estate, and beneficiaries). Further, the vesting of absolute, standardless discretion in our orphans' courts yields the potential for disparate treatment. …

\*\*\*\*

… Thus, I believe our Appellate and Orphans' Court Procedural Rules Committees should continue to study the application of the present rule in practice and make recommendations for improvements where appropriate, particularly given the troubling implications of maintaining a system based on absolute, largely standardless discretion.

*Id.* at 1120-1121 (Saylor, J., concurring).

Thereafter, Rule 342 was revised, effective February 12, 2012. The revised rule eliminated the requirement that the orphans' court make a determination of finality, and identified certain orders that would be appealable as of right.[15] The Rule specifically states that objections to such

_____

[15] As the Pennsylvania Supreme Court recently explained in *In re Estate of Plance*, 175 A.3d 249 (Pa. 2017):

Prior to the most recent revision, [Rule 342] "[did] not require that any particular class of orders be treated as final, but instead [left] the determination of finality of orders not disposing of all claims and all parties up to the Orphans' Court judge." *In re Estate of Stricker*, 602 Pa. 54, 977 A.2d 1115, 1118 (Pa. 2009). Concurring in *Stricker*, then-Justice, now Chief Justice, Saylor questioned the prudence of this rule, as the case-by-case determination of finality procedure could lead to inconsistent results in different Orphans' Courts, and could cause undue delays in estate administration. Justice Saylor opined that "allowing appeals as of right most frequently would result in a net benefit." *Id.* at 1121 (Saylor, J., concurring). Following Justice Saylor's recommendation in *Stricker*, Rule 342 was revised to provide for

orders must be raised in an immediate appeal, and failure to do so constitutes

waiver. The Comment to Rule 342 states:

> [I]t is difficult to analogize civil litigation to litigation arising in estate, trust and guardianship administration. The civil proceeding defines the scope of the dispute, but the administration of a trust or estate does not define the scope of the litigation in Orphans' Court. Administration of a trust or an estate continues over a period of time. Litigation in Orphans' Court may arise at some point during the administration, and when it does arise, the dispute needs to be determined promptly and with finality so that the guardianship or the estate or trust administration can then continue properly and orderly. Thus, the traditional notions of finality that are applicable in the context of ongoing civil adversarial proceedings do not correspond to litigation in Orphans' Court.
>
> In order to facilitate orderly administration of estates, trusts and guardianships, the 2011 amendments list certain orders that will be immediately appealable without any requirement that the Orphans' Court make a determination of finality. Orders falling within subdivisions (a)(1)-(7) no longer require the lower court to make a determination of finality.
>
> Subdivisions (a)(1)-(7) list orders that are unique to Orphans' Court practice, but closely resemble final orders as defined in Rule 341(b).

Pa.R.A.P. 342, Comment.

---

> appeals as of right for specified categories of Orphans' Court orders. *See* Pa.R.A.P. 342(a). The rule explicitly states that objections to such orders must be raised in an immediate, timely appeal, on pain of waiver. *See* Pa.R.A.P. 342(c).

*Id.* at 269.

Here, the private sale occurred on February 15, 2013, having been authorized by the orphans' court's March 22, 2011 order. On March 7, 2013, the Executor filed a Report and Return of Private Sale (Report), seeking court approval of the private sale. The Report attached fiduciary deeds for the properties as Exhibits "1", "2" and "3". The Executor's fiduciary deed for Homestead Place contained **NO** provision regarding the Dunzik's ownership of the house and barn, underlying land, and appurtenances. The April 30, 2013 order finalized the sale of the real estate by the Executor and approved the fiduciary deeds attached to the Report as Exhibits 1, 2, and 3.

Significantly, the orphans' court's April 30, 2013, order explicitly directs that "the Report of Edward P. Krasinski, Executor of the estate of the above Decedent, is hereby approved in all regards and the properties described in Exhibits 1, 2 and 3 of said Report shall be conveyed to the grantees in accordance with the terms set out in the Report." Order, 4/30/2013. As such, the order clearly "determines an interest in real … property." Pa.R.A.P. 342(a)(6). Consequently, the orphans' court's April 30, 2013, order was appealable as of right pursuant to Rule 342. Although Patricia filed *pro se* objections, as the orphans' court noted, she "did not raise the appropriate issues in her *pro se* objections," and the private sale was confirmed. Orphans' Court Opinion, 4/22/2015, at 10.

Furthermore, Patricia had challenged ownership of the properties in a civil action that caused the court to issue a stay on the Executor's sale of the

properties. The civil suit resulted in the trial court's December 24, 2012, determination that there was no oral agreement upon which Patricia could base her claim of ownership of the properties. This Order was never appealed. *See* Footnote 5, *supra*. Therefore, it is evident that Patricia was aware that her claims of ownership to the properties would be lost upon sale of the properties.

When the orphans' court entered its April 30, 2013, order, approving the private sale and the fiduciary deeds, Patricia lost her claims of ownership in Homestead Place and the other properties. Therefore, as the orphans' court correctly determined, Patricia's failure to appeal the April 30, 2013 order pursuant to Rule 342(a)(6) resulted in waiver. *See* Pa.R.A.P. 342(c). Accordingly, Patricia cannot obtain relief on her claims related to the private sale.

In Patricia's next two issues, she contends that the Executor mishandled the tax ramifications of the Estate by (1) reporting to the Internal Revenue Service that Patricia was the seller of her interest in real estate, rather than the Estate and, (2) improperly valuing the Decedent's real estate, resulting in unrealistic appreciation and capital gains. *See* Patricia's Brief at 23-32.

Our standard of review is well settled:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the

judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the [o]rphans' [c]ourt's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Bechtel*, 92 A.3d 833, 837 (Pa. Super. 2014).

We begin with Patricia's contention that it is the Estate that sold the real property, and not Patricia individually, and therefore she should not have been subjected to any tax ramifications of the sale. *See* Patricia's Brief at 23-29. In concluding that this issue was without merit, the orphans' court opined:

In regard to Objection No. 5 wherein [Patricia] objects to receiving the 1099-S documents as to her sale of the one-half interest in the properties thereby incurring a capital gains tax, the Estate has acted appropriately. 20 Pa.C.S.A. § 301 entitled Title to Real and Personal Estate of the Decedent indicates, in part, as follows: (b) Real Estate. - Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject to all the powers granted to the personal representative by this Code and lawfully by the will and to all orders of the court.

Therefore, while the Estate may have appeared to be the owner and seller of the properties, legal title actually was immediately vested in Sophia's four children as of her date of death. Since [Eleanor] renounced her right to her one-fourth interest to [Patricia], [Patricia] is deemed to have sold her 50% interest in the real estate via [Edward], the Executor, who had the legal power to do so pursuant to Court Order….

Orphans' Court Opinion, 4/22/2015, at 10-11.

We disagree with the orphans' court's analysis. Because the real estate was not specifically devised, we conclude the taxable gain from the private

- 17 -

sale should have been borne by the Estate, as the Executor was the seller of the real estate.

Both the orphans' court and the Executor fail to recognize the import of the second half of Section 301(b) of the PEF Code, which provides:

> Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees, ***subject however, to all powers granted to the personal representative by this title and lawfully by the will and to all orders of the court.***

20 Pa.C.S. § 301(b) (emphasis added). In this regard, as discussed above, the Executor had the authority to sell the Decedent's real estate, which was not specifically devised, pursuant to Sections 3311(a) and 3351 of the PEF Code. As already stated, Section 3351 provides:

> ***Except as otherwise provided by the will, if any, the personal representative may sell, at public or private sale***, any personal property whether specifically bequeathed or not, and ***any real property not specifically devised***, and with the joinder of the specific devisee real property specifically devised. …

20 Pa.C.S. § 3351 (emphasis added).

Furthermore, Section 3357(a) provides, in relevant part:

> If the personal representative has given such bond, if any, as shall be required in accordance with this title, ***any sale,*** mortgage, or exchange by him, whether pursuant to a decree or to the exercise of a testamentary power or of a power under this title, ***shall pass the full title of the decedent therein, unless otherwise specified,*** discharged from the lien of legacies, from liability for all debts and obligations of the decedent, from all liabilities incident to the administration of the decedent's estate, and from all claims of distributees and of persons claiming in their right, …

20 Pa.C.S. § 3357 (emphasis added).

In ***Quality Lumber & Millwork Co. v. Andrus***, 200 A.2d 754 (Pa. 1964), the Pennsylvania Supreme Court construed several sections of the Fiduciaries Act, now sections 301(b), 3351 and 3357 of the PEF Code. The question was whether Mrs. Andrus, the sole heir and personal representative of the decedent, acquired title in her individual capacity to real estate owned by the decedent upon the death of the decedent, or not until a later distribution of real estate from the estate. Our Supreme Court held that title may pass to heirs upon death, but during the administration of the estate the title was "*expressly* subjected to those powers statutorily granted to her in her capacity of *personal representative*." ***Id.*** at 756 (emphasis in original). The ***Quality Lumber*** Court concluded: "Until a distribution had been made, the only proper source of full title of the decedent was the administratrix." ***Id.*** at 759. ***Accord Tigue v. Basalyga***, 304 A.2d 119 (Pa. 1973) (personal representative was an indispensable party in plaintiff's action against heirs to set aside a deed allegedly obtained by fraudulent acts committed by deceased-grantee).

Furthermore, because Patricia is a residuary beneficiary and the real estate was sold to liquidate the assets for distribution, Item III of the Will is controlling: "[A]ll taxes that may be assessed in consequence of my death, of whatever nature, and whatever jurisdiction imposed, shall be paid from my residuary estate as a part of the expense of the administration of my estate." Last Will and Testament, 8/18/1999, at Item III.

Finally, and significantly, the Executor conveyed the properties by separate fiduciary deeds, wherein he identified himself as the Grantor.

Accordingly, based upon the above-cited provisions of the PEF Code, the holding in **Quality Lumber**, Item III of the Decedent's Will, and the fiduciary deeds, we conclude the Executor was the seller of the Decedent's real estate, and not Patricia, who was not specifically devised the real estate. As such, the Estate was responsible for the taxable gain from the private sale, and Patricia is entitled to relief on this basis.

Next, Patricia argues that the Executor did not properly value the properties on the date of death of the Decedent, which resulted in unrealistic appreciation and capital gains. Here, the Executor used the real estate tax assessment value and a factor called the common level ratio to establish minimal values of the real estate interests on the date of the Decedent's death. Patricia points out "the Executor sold four (4) tracts of land, in fee, for a total consideration of $405,000.00, and experienced a 'gain' in value of $321,620.79 (nearly 500%) over the $83,379.00 reported." Patricia's Brief at 31. Patricia maintains there should have been no gain at all.

Patricia argues the Internal Revenue Code provides for a "step-up" in basis pursuant to IRC § 1014(a) when valuing lands and property received from a decedent's estate. *Id.* She states the basis of land acquired from a decedent is equal to the date of death value of the land. *Id.* She concludes, "Had the Estate properly placed the value of the lands at or equal to the

'appraised' value (and assuming that the sales prices still equaled that value) the [E]state and the beneficiaries would have experienced no gain, and consequently no income tax when the [E]state sold the lands." *Id.* at 31-32.[16]

We find no reason to conclude Patricia is entitled to relief on this claim. The Executor's Pennsylvania inheritance tax return, which used the real estate tax assessment value and the common level ratio to establish the date of death values, was "accepted as filed" by the Pennsylvania Department of Revenue. *See* Commonwealth of Pennsylvania Department of Revenue Notice of Inheritance Tax Appraisement, Allowance or Disallowance of Deductions and Assessment of Tax, 6/22/2009. Therefore, Patricia's argument that the Executor's method of determining the value of the real estate on the date of death was "grossly flawed"[17] is unavailing.

Finally, while Patricia also argues that the properties were overvalued or undervalued in the appraisals, any issue as to valuation relates to the

_____

[16] The bids for each property were the same as the 2010 appraisal values. **See** Orphans' Court Opinion, 4/22/2015, at 7. While Patricia is correct that the basis is stepped up to the date of death, she offers no evidence as to the "proper" value on November 4, 2006, the Decedent's date of death. It is highly unlikely that the Internal Revenue Service would accept an appraised value, as of January 30, 2010, as the date of death value for calculating capital gains.

[17] Patricia's Brief at 31.

private sale that was approved by the April 30, 2013 order. Because we have determined, **supra**, that order was an appealable order, Patricia has waived this aspect of her claim.

In sum, we reverse Paragraph 3 of the orphans' court's July 16, 2015 order, to the extent that it dismissed Patricia's exceptions that sought relief on her claim that the Estate, and not Patricia, was responsible for the taxable gain from the private sale. The remaining claims have been waived or warrant no relief.

## III. The Estate's Objections

We now turn to the issues raised by the Estate and provide the following background. Contained within Patricia's sixth objection to the first and final account was the following:

> 41. [Edward] has received and improperly withheld from [Patricia] revenues related to gas exploration and leasing in the approximate amount of $40,000.00 related to the oil and gas contained within and underlying [Homestead Place].

> 42. [Patricia] is the owner of the oil & gas interest underlying [Homestead Place], by virtue of a deed from Edith Nearhood, dated July 9, 2002, and recorded as Instrument No. 200211242.

Objections to First and Final Account, 7/3/2014, at ¶¶ 41-42.

In sustaining this objection, ruling in favor of Patricia, and ordering the Executor to pay Patricia $39,536, the orphans' court stated:

> [The aforementioned objection] claims that [Edward] improperly withheld gas monies in the amount of $40,000.00 relating to [Homestead Place]. It states therein that [Patricia] is the actual owner of oil and gas interests underlying [Homestead

- 22 -

Place] by virtue of a deed recorded in Clearfield County as Instrument No. 200211242. This deed was not offered as an exhibit at [the] time of [the] non-jury trial. Following the non-jury trial and receipt of briefs, while preparing the court's opinion, the undersigned went to the recorder of deeds office and obtained a copy of [the deed which Patricia references]. The court hereby takes judicial notice of the deed, and the court has caused it to be filed with the record for potential appellate review. This 2002 deed is from Edith Nearhood as grantor, to [Patricia] as grantee. The deed describes a parcel of 96 acres and one hundred and eight perches in Cooper Township, Clearfield County, with Tax Map number 110-R7-9, and purports to convey coal, gas and oil, and other subsurface rights to [Patricia]. [Homestead Place] in the case at bar is identified with tax map number 110-R7-9.

\*\*\*

This court can find no testimony from the non-jury trial where this issue, being [Patricia's] claim that she is the full and complete owner of the oil and gas interests under this tract, was discussed. In fact, no evidence was submitted by either party.

\*\*\*

A close examination of the first and final account shows on page 9 under "Other Income" the gas lease payments. By far, most of the payments are from [Homestead Place]. (A total of $39,536.00). On page 3 under "Receipts of Principal" the Estate lists its assets; [Homestead Place] is number 4 under the "Real Estate" heading. It is described as "House, buildings, and 98.84 acres (**less 96 A of coal, minerals, gas & oil**)…." (Emphasis added). The same exclusion of sub-surface rights [appears in other exhibits]. The court, in trying to analyze this mishmash, wondered if perhaps the sale of [Homestead Place] was not to include the oil and gas rights such that the same could be retained in the Estate for the future benefit of all heirs. However, a review of the documents describing the terms of the private sale provides no reference whatsoever to any oil, gas or other sub-surface rights as to [Homestead Place].

[] Exhibit 27 is a copy of the memorandum of lease dated September 15, 2009 wherein [Edward, as executor of the Estate,] confirms the Estate has entered into a gas lease (or consultant agreement) with Long Consulting Group. This is clearly referring

- 23 -

to [Homestead Place,] as the property subject to the lease is described as Tax Parcel No. 110-R07-9, 98.84 acres and in Cooper Township. The court wonders how the executor can enter into a gas lease on a property which the first and final account (and the inheritance tax return) clearly indicates that the oil and gas rights are excluded. (at least 96 acres thereof).

Based upon a substantial lack of information and a severely inadequate record, the court must decide if the Estate properly accounted for the gas royalties from [Homestead Place]. The court boils it down to the following. [Patricia] has a deed purporting to convey to her all sub-surface rights beneath the Homestead surface. The Estate in its Inheritance Tax return and first and final account clearly indicates it does not own 96 acres of oil, gas and other sub-surface rights below the Homestead [Place] surface. The court finds [Patricia] has met her burden of proof and finds the Estate erred by including Homestead [Place] gas royalties in the amount of $39,536.00 as an Estate asset. These monies will be paid to [Patricia] and removed from the Estate assets.

Orphans' Court Opinion, 4/22/2015, at 17-19 (unnecessary capitalization and some citations omitted omitted).

Based on the foregoing, the orphans' court sustained Patricia's Objection No. 6, paragraphs 41 and 42, and required the Executor to pay Patricia $39,536. The Executor filed exceptions, arguing that Patricia was not the owner of the sub-surface estate at issue, and the orphans' court erred by granting Patricia compensation on this basis. The Executor also contended that Edith Nearhood never owned the sub-surface estate and that any deed she granted could not have conveyed what she did not own.

On July 16, 2015, the orphans' court dismissed the Executor's exceptions, concluding that the Estate "has attempted to introduce facts and

documents not of record in the present matter" in support of its dismissal.

Order, 7/16/2015, at ¶1.  This issue is the basis of the Estate's appeal.

The Executor first contends that the orphans' court erred by purporting

to take judicial notice of the Nearhood deed, then giving it conclusive effect,

and thereby sustaining Patricia's objections related to the oil and gas

payments. Estate's Brief at 12-16.

> Pa.R.E. 201(b) governs judicial notice of adjudicative facts. The rule states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b).  A court may take judicial notice of an indisputable adjudicative fact. A fact is indisputable if it is so well established as to be a matter of common knowledge. Judicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary.

**Kinley v. Bierly**, 876 A.2d 419, 421 (Pa. Super. 2005) (some citations and

quotation marks omitted).

Here, the orphans' court took judicial notice of a deed filed in the

recorder of deeds office.  This, in and of itself, was not error because it is well

settled that "the court has the right to take judicial notice of public

documents." **Bykowski v. Chesed, Co.**, 625 A.2d 1256, 1258 n.1 (Pa. Super.

1993).  However, the rule provides that "[o]n timely request, a party is

entitled to be heard on the propriety of taking judicial notice and the nature

of the fact to be noticed. If the court takes judicial notice before notifying a

party, the party, on request, is still entitled to be heard." Pa.R.E. 201(e).

Instantly, the Executor became aware of the orphans' court's decision to take judicial notice when it filed its opinion on April 22, 2015. The Executor timely filed exceptions contesting the implications of the deed on May 12, 2015. However, the orphans' court dismissed these exceptions on the basis that "the record has previously closed." Order, 7/16/2015. Thus, it is clear that the Executor did not have the opportunity to be heard. Where, as here, a party has made a timely request to be heard after learning of the judicial notice, the orphans' court was obliged to entertain it. Pa.R.E. 201(e).

In this case, the need was even more apparent where the orphans' court took judicial notice without any request by Patricia or notice to any party. The orphans' court then went on to offer a series of factual conclusions on this basis. The Nearhood deed may or may not be a valid deed to the property. However, the orphans' court should leave it to Patricia and the Executor to litigate that issue. Accordingly, we vacate Paragraph 1 of the orphans' court's July 16, 2015 order, dismissing the Estate's exceptions, and we remand to the orphans' court to conduct a hearing on this objection. At that hearing, the burden is on Patricia, as the party objecting to the first and final account, to present evidence of her right to those oil and gas payments.

In conclusion, based upon the above discussion concerning the appeals of Patricia and the Estate, we affirm the orphans' court's July 16, 2015, order in part, reverse in part, vacate in part, and remand for proceedings consistent with this Opinion.

Order affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this Opinion. Rule to Show Cause discharged. Jurisdiction relinquished.

President Judge Gantman, President Judge Emeritus Bender, Judge Bowes, Judge Lazarus, Judge Olson, Judge Stabile and Judge Dubow join the majority opinion.

Judge Shogan files a concurring and dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2018