J-A13025-21

2021 PA Super 203

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALLACE F. OTT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: PNC BANK, N.A. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1591 EDA 2020 |

Appeal from the Decree Entered July 20, 2020
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s): No. 1251 IV of 1963

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.: **FILED OCTOBER 12, 2021**

PNC Bank, N.A. ("Accountant" or "PNC"), appeals from the Order overruling in part and sustaining in part the objections filed by co-trustees/beneficiaries Robert W. Prigge, Jr., and James E. Shryock ("Objectors") to the Third Account of the Wallace Ott *Inter Vivos* Trust ("Trust"). PNC challenges the orphans' court's limiting of PNC's trust administration fee to five percent of income and its granting a one-time principal fee of $145,000 as compensation for services rendered during the third accounting period covering November 8, 2004, to May 15, 2017. PNC also challenges the orphans' court's denial of its request for the Trust to pay its attorney's fees. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

We glean the following relevant facts from the orphans' court's July 20, 2020 Adjudication and the reproduced record. On June 10, 1954, Wallace Ott ("Settlor") executed a Deed of Trust for the benefit of his four grandchildren and their issue, appointing Tradesmens Land Title Bank and Trust Company ("Tradesmens") as trust administrator. Settlor appointed Tradesmens and himself as co-trustees. The Trust instrument does not contain any provisions addressing trustee compensation. However, also on June 10, 1954, Tradesmens' assistant vice president, who had signed the Trust instrument on behalf of Tradesmens, sent a letter addressed to Settlor ("the 1954 Letter") containing the following paragraph regarding its fee for administering the Trust:

> This letter is to advise you that our fee for administering the trust which you established yesterday for the benefit of your grandchildren will be the same as that which we are currently charging in Mrs. Ott's Deed of Trust and in your personal Deed of Trust; namely [5%] of income collected.

Letter from Sidney B. Dexter to Settlor, dated June 10, 1954.

*First Account*

Settlor died on July 18, 1962. To discharge Settlor's estate, Provident Tradesmens Bank and Trust Company ("Provident"), Trademens' successor in interest, filed a First Account covering the period of July 10, 1954, to April 4, 1963. No one objected, and the court confirmed the First Account on December 27, 1963. Throughout the first accounting period, the Trust had paid Provident an administrative fee of five percent of the Trust's income ("five

percent income commission") pursuant to the 1954 Letter. The court also confirmed the appointment of Richard W. Shryock and John S. Prigge, Jr., as co-trustees, as provided in the Trust instrument, along with Provident.

*Second Account*

Richard Shryock died in May 2003, and on May 25, 2005, PNC, Provident's successor in interest, filed a Second Account covering the period from September 10, 1971, to November 8, 2004. PNC requested an interim principal commission of 2.8% for this second accounting period when the fair market value of the Trust was approximately $1.9 million. No one objected, and the court confirmed the Second Account, granted the requested principal commission, and confirmed the appointment of Objector Jamie Shryock to succeed Richard Shryock as co-trustee. Again, the Trust paid PNC a five percent income fee pursuant to the 1954 Letter throughout the second accounting period.

*Third Account*

John Prigge, Jr. died on May 15, 2017, and a majority of the income beneficiaries appointed Objector Robert Prigge, Jr., to replace him as co-trustee. Intending to discharge John Prigge's estate, PNC prepared a Third Account covering the period from November 8, 2004, to May 15, 2017. By email dated August 21, 2018, PNC informed Objector Jamie Shryock that the Third Account was nearly finished and that it intended to seek a one-time principal fee of $145,000 as a "gesture of good faith," a figure PNC believed

was "reasonable under the circumstances." Email from PNC's Mikal Payne, dated 8/21/18, RR at 810a-811a. **See also** N.T., 11/5/19, at 77-78 (Testimony of Mikel Payne, Vice President and Trust Officer of PNC). In an email dated August 29, 2018, Mr. Payne informed Jamie Shryock that "[t]he trust is currently being charged 5% of collected income; whereas, other irrevocable trusts we administer are charged according to our published fee schedule beginning at 1.4% on the first $2,000,000 and 1% on the next $3,000,000." Email from Payne, dated 8/29/18, RR 814a. During the third accounting period, PNC once again collected a five percent income commission pursuant to the 1954 Letter, totaling approximately $48,000.00.[1]

On October 10, 2018, PNC informed all of the beneficiaries about its intent to collect an "interim principal fee" by sending a letter informing them that it would be requesting such approval from the court. RR. 816a-817a. In that letter, PNC requested that the beneficiaries "consent" to a "a one-time principal fee of $142,751.63," which it explained was one-half of what PNC would have earned if they had charged fees beginning in 2007 in accordance

_____

[1] The Third Account stated the Trust had a fair market value of $2,615,100.27, and a combined balance of $1,250,716.36, with the assets held in bonds, common stocks, and mutual funds. Between the Second and Third Accounts, the fair market value of the Trust increased over $600,000 from approximately $1.9 million to approximately $2.6 million. Beneficiaries received distributions from Trust income of approximately $944,388 over the thirteen-year third accounting period, compared to $102,320 distributed over the thirty-three-year second accounting period. Adjudication, 7/20/20, at 29-30; **see also** Third Account, RR 119a-192a.

with its tiered fee schedule. *Id*. The letter concluded that PNC would seek the court's approval for the full amount in accordance with their published fee schedule, *i.e.*, $285,503.25, if the beneficiaries did not "consent" to its suggested interim principal fee. *Id*.

On April 2, 2019, PNC filed its Petition for Adjudication, seeking approval of the Trust's Third Account, and requesting fees of $69,464.36 as income commission and $216,038.89 as principal commission, an aggregate of $285,503.25.[2] *See* Rider annexed to Third Account, at ¶(4)(2).[3] PNC also sought attorney's fees of $13,270.93 representing those incurred through March 31, 2019, and a reserve of $7,500 for counsel fees and expenses incurred in connection with the preparation and filing of the Third Account.

On May 3, 2019, Objectors filed Objections to the Third Account, later amended with permission, asserting that (1) the additional compensation sought by PNC was excessive and unreasonable; (2) Section 7768 of the Uniform Trust Act, 20 Pa.C.S. § 7768, if applicable, did not require rote application of a trustee's published standard fee schedule; and (3) the requested attorney's fees are improper as PNC should use corporate funds,

---

[2] PNC's requested principal commission of approximately $216,039 would be approximately 12.9% of the principal's adjusted balance of approximately $1,670,968, or 8.25% of the trust's fair market value of $2,615,100. *See* Third Account, RR 120a.

[3] PNC subsequently corrected the aggregate amount it sought to approximately $265,000. *See* N.T at 39.

not Trust funds, to pay for its defense of its Third Account.[4]  PNC responded that pursuant to Section 7768(a) of the Uniform Trust Act, its request for interim compensation and attorney's fees was reasonable.

The court began a non-jury trial on November 5, 2019, at which Objectors first presented testimony as on cross from the PNC fiduciary advisor in charge of the Trust, Mikal L. Payne, CFP.  Mr. Payne testified, *inter alia*, that the management of the Trust required no special attention.  N.T., 11/5/19, at 25.  In addition, the court admitted an emailed letter from Mr. Payne to Objector Jamie Shryock, indicating it would seek court approval for a "one-time principal fee of $145,000 . . . as compensation for fiduciary services rendered during the accounting period."  **See** Email message from Mikal L. Payne to Jamie Shryock, dated 8/21/18, at 2, RR at 810a-811a. Objectors also presented evidence that PNC and its predecessors in interest had only ever charged the Trust a five percent income commission.  Objector Shryock testified that PNC never approached him during the third accounting period to discuss either its fee schedule or additional compensation.  He stated he was, thus, "dumbfounded" by PNC's request for increased income commission. Adjudication at 7, citing N.T. at 95.

The trial continued on February 11, 2020, after the Objectors had filed amended objections.  PNC presented direct testimony from Mr. Payne, who

---

[4] Because the Trust has two contingent remainder beneficiaries, the Office of the Pennsylvania Attorney General joined the objections.

"reaffirmed his belief in the reasonableness of the $145,000 principal commission." Adjudication at 9, citing N.T., 2/11/2020, at 7-8. Mr. Payne stated that the "offer" of $145,000 as an interim principal commission was reasonable because it would "avoid the time and hassle of litigating these things, and [ ] get to that result more expeditiously[.]" *Id*. at 10, citing N.T., 2/11/20, at 25. Linda Manfredonia, a fiduciary consultant once employed by PNC, testified regarding her historical and legal knowledge of trust creation and administration. *See* N.T. 2/11/20, at 54-105.

On July 20, 2020, the trial court entered an Adjudication, finding PNC is entitled to five percent income commission pursuant to the fee agreement set forth in the 1954 Tradesmens Letter to Settlor. The court also found that a one-time principal commission of $145,000 is reasonable compensation for PNC's administrative services during the third accounting period. The court further concluded that PNC's attorney's fees and costs associated with its defense of the Third Account are not reimbursable out of trust funds, although PNC's attorney's fees and costs incurred during the third accounting period, including the preparation and filing of the Third Account, are proper expenses to be reimbursed from trust funds.[5]

---

[5] In a footnote, the court acknowledged that the Objectors had filed a separate petition asking the court to order Accountant to honor a decision of the majority of the trustees that the Trust pay Objectors' attorney's fees. In light of its adjudication, the orphans' court suggested that the parties resolve the issue of Objectors' attorney's fees raised in that petition amicably to avoid another time-consuming hearing. *See* Adjudication at 41 n.20.

PNC timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. In response, the trial court filed a "Final Decree" indicating that its July 20, 2020 Adjudication fully addressed the issues raised in PNC's Rule 1925(b) Statement.

PNC presents the following Statement of Questions Involved for this Court's review, reordered:

1. By statute, a fee agreement, signed by [S]ettlor or his authorized designee identified in the trust, can establish the fees to be paid to a trustee. A 1954 letter, written by PNC's predecessor informed [S]ettlor of the bank's then-current standard income commissions. Did the trial court err in characterizing the letter as a contract between [S]ettlor and the bank and by concluding that the bank officer signed the letter as settlor's statutory designee?

2. Did the trial court err by (a) ignoring the statutory presumption that PNC's fee request in accord with its standard rates was reasonable and by (b) placing the burden on PNC to prove by "clear and convincing" evidence that the 1954 standard five percent income commission was unreasonable or that PNC's duties were not substantially different from those of its predecessor when the trust was created in 1954?

3. PNC's fee request was premised on its standard rates as applied to the fair market value of the principal of the trust. Did the trial court err by characterizing the request, in part, as an additional income commission?

4. Prior to filing the account, in an effort to avoid litigation, payment delay and to engender good will with the beneficiaries, PNC offered a substantial discount from its scheduled rates if the co-trustees and the beneficiaries agreed on a compromised amount. Did the trial court err in finding that the lesser amount of the contingent offer of compromise constituted compelling evidence that PNC's scheduled rates were unreasonable?

5. The trial court denied PNC recovery of its counsel fees expended in defending its statutory-based fee request on what it characterized as PNC's "imprudent conduct" in "blindsiding" Objectors when it requested its full fees permitted by statute. Did the trial court err in denying PNC an award of its attorneys' fees when the uncontested record evidence demonstrates that PNC informed Objectors in writing that it would seek Court approval to charge the full amount of its fees based on its standard rates if its offer was rejected?

6. Objectors rejected PNC's compromise offer, instead filing and prosecuting objections. Did the trial court err in finding that Objectors' counsel fees should be paid from the trust when Objectors' litigation strategy ultimately provided no additional benefit to the trust, resulting instead in a substantial loss to the trust corpus?[6]

Appellant's Br. at 8-10 (suggested answers omitted).

**Standard and Scope of Review**

When reviewing an order entered by the orphans' court, the "decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Krasinski*, 188 A.3d 461, 466 (Pa. Super. 2018) (*en banc*) (citation omitted), *aff'd*, 218 A.3d 1246 (Pa. 2019).

**Issues 1, 2 and 3 – The 1954 Letter from Trademens established a mutual understanding between Settlor and Trustee that Trustee would charge and receive a five percent income commission for Trust administration.**

---

[6] As noted above, the resolution of Objectors' Petition for counsel fees is a matter separate from the Petition that is the subject of this appeal. Accordingly, we decline to review PNC's sixth issue.

PNC's first three issues rest on whether the trial court erred in concluding that the 1954 Trademens Letter was an agreement establishing a five percent income commission for administration of the Trust. PNC argues that the 1954 Tradesmens Letter is not a fee agreement and, thus, pursuant to Section 7768 of the Uniform Trust Act, PNC is entitled to a fee provided in its own published fee schedule because five percent is not reasonable. Appellant's Br. at 36-42, 53-56.  We disagree.

"An agreement is a valid and binding contract if: the parties have manifested an intent to be bound by the agreement's terms; the terms are sufficiently definite; and there was consideration." *In re Estate of Hall*, 731 A.2d 617, 621 (Pa. Super. 1999). In *In re Estate of Breyer*, 379 A.2d 1305 (Pa. 1977), the Pennsylvania Supreme Court found that a letter from a corporate trustee stating that it would charge a two percent income commission was a fee agreement because the letter was definite and unambiguous.  *Id*. at 1309-10.  "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Ingrassia Constr. Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984).

The Uniform Trust Act provides that "[i]f a trust instrument or written fee agreement signed by the settlor or anyone who is authorized by the trust instrument to do so specifies a trustee's compensation, the trustee is entitled to the specified compensation."  20 Pa.C.S. § 7768(b).

The trial court here found that, as in **Breyer**, **supra**, the 1954 Letter contained terms that are definite and unequivocal, and Settlor and Tradiemens manifested an intent to be bound by them. The court stated:

> [The 1954 Letter] , like the letter in **Breyer**, unequivocally states the amount, source, and timing of Tradesmens' compensation: "five percent of the income collected." The [1954 L]etter is clear and unambiguous as it relates to trustee compensation from income. Also, valuable consideration exchanged hands as Tradesmens received a five percent of income fee for promising the Settlor it would administer the Trust for the beneficiaries.
>
> * * *
>
> [ ] [T]he court finds the Settlor and Tradesmens manifested a intent to be bound by the terms of [the 1954 Letter]. Tradesmens drafted the letter the same day as the Trust's execution, the letter explicitly mentions Tradesmens' compensation, and the letter drew no protest from the Settlor. Under these facts, a reasonable person would assume the Settlor and Tradesmens discussed the matter of compensation and there was a meeting of the minds on that issue. The letter itself suffices to prove this, but the parties' later conduct lends added support. In the wake of the letter, the Settlor transferred the Trust corpus to Tradesmens, and Tradesmens proceeded to administer the Trust. For years, Tradesmens calculated its fee for services rendered exactly as prescribed by the letter. . . . Whatever the parties' hidden aims with respect to the Tradesmens' letter, the record manifests the parties' intent to perform according to its terms.

Adjudication, 7/20/2020, at 15-19.

Our review of the record and relevant legal authority supports the trial court's findings. Based on the evidence presented, including testimony that PNC and its predecessors received, without complaint, a five percent income commission as provided in the 1954 Letter for nearly 60 years, it is disingenuous, at best, for PNC to argue that there was no income fee

agreement. PNC's arguments—premised on its assertion of the non-existence of an income fee agreement—thus fail to garner relief.

In its second and third issues, PNC argues that "even if there was a fee agreement on income in place," PNC satisfied the statutory requirements set forth in Section 7768(b) of the Uniform Trust Act, "entitling it to the presumptively reasonable fees it requested." PNC Br. at 44. PNC also avers that the trial court erroneously determined that the income commission it requested was an "additional income fee." PNC's Br. at 35.

This Court has observed that the determination of proper compensation is a "matter peculiarly within the knowledge, competence, and experience" of the orphans' court. *In re Raymond G. Perelman Charitable Remainder Unitrust,* 113 A.3d 296, 308–09 (Pa. Super. 2015) (citation omitted). *See In re Estate of Sonovick,* 541 A.2d 374, 376 (Pa. Super. 1988) (indicating the determination of whether compensation claimed by a fiduciary is "reasonable and just" is left to the sound discretion of the trial court).

Courts must give effect to a fee agreement's terms. *Estate of Schwenk*, 490 A.2d 428, 432 (Pa. 1985). Thus, where a valid agreement between a settlor and trustee fix the terms of the trustee's compensation, "courts must ordinarily enforce the terms of the agreement without making an independent determination of whether the terms are reasonable." *In re Trust of Duncan* 391 A.2d 1051, 1055 (Pa. 1978).

However, pursuant to Section 7768(b) of the Uniform Trust Act, a court may consider a request for an additional income fee. Section 7768(b) provides:

> **(b) If specified; adjustment.--**If a trust instrument or written fee agreement signed by the settlor or anyone who is authorized by the trust instrument to do so specifies a trustee's compensation, the trustee is entitled to the specified compensation. The court may allow reasonable compensation that is more or less than that specified if:
>
> (1) the duties of the trustee have become substantially different from those contemplated when the trust was created or when the fee agreement was executed;
> (2) the compensation specified in the trust instrument or fee agreement would be unreasonable; or
> (3) the trustee performed extraordinary services, and the trust instrument or fee agreement does not specify the trustee's compensation for those services.

20 Pa.C.S. § 7768(b). **_See also In re Trust of Duncan_**, **_supra_**, at 1055 (recognizing "an exception to the general rule in circumstances where the trustee has performed extraordinary services beyond those contemplated by the parties or where the compensation fixed by the agreement is so low that the unwillingness of a competent trustee to continue or undertake to administer the trust would defeat or substantially impair its purposes[.]"[7]).

The party seeking the deviation from the fee agreement has the burden of proving that the services it rendered establish that the amount claimed is

---

[7] Section 7768(b) became effective in 2006, thus, codifying the exception recognized in **_Duncan_** in 1978 and its progeny.

"reasonable compensation." *In re Smith*, 874 A.2d 131, 138 (Pa. Super. 2005) *(en banc)*.

Here, the orphans' court found that PNC had not provided specific evidence from which it could "properly appraise Accountant's alleged substantially different duties and adjust its specified compensation accordingly." Adjudication at 24. First, in rejecting PNC's contention that five percent was unreasonable, the court concluded:

> Here, the [c]ourt does not find a [five percent] income fee agreement to be unreasonably low. For starters, Accountant intends to continue serving as the corporate fiduciary of the Trust.[2] This without more obviates Accountant's claim the specified compensation is too low. *See* [*Duncan*, *supra*, at 1055] (stating adjustment of specified compensation [is] allowed "where the compensation fixed by the agreement is so low that the unwillingness of a competent trustee to continue or undertake to administer the trust would defeat or substantially impair its purposes"); *In re Estate of Smith* [*supra*, at 137] ("When the question is whether the trustee compensation is so low as to thwart the purpose of the trust, … the proper inquiry is whether a competent trustee would service the trust at the designated rate of compensation."). If the [five percent] agreement were too low, why does Accountant persist in administering the Trust? . . . One might expect an unreasonably low fee to produce unwillingness on Accountant's part to continue as the corporate fiduciary, but Accountant displays no unwillingness and has not expressed any intention of resigning its office.
>
> _____
>
> [2] The [c]ourt concludes this based on the fact the petition for adjudication asks the [c]ourt [to] award the Trust principal to Accountant for continued administration.

Adjudication at 20-21.

- 14 -

The Orphans' court also concluded that PNC had "not present[ed] clear and convincing evidence of how its duties are so substantially different as to warrant an adjustment of its specified compensation." *Id*. at 21. The court recognized that trust administration generally has changed since 1954, as PNC witness Linda Manfredonia testified, but concluded that because PNC did not present any evidence "linking changes in trust administration overall to concrete changes in Accountant's duties vis-à-vis this Trust," it could not find PNC's duties to be "substantially different."[8] *Id*. at 22. "If anything, Mr. Payne's testimony shows administration of the Trust is a 'matter of math, not discretion,' and his statements about the run-of-the-mill nature of the Trust's administration undermines Accountant's claim of substantially different duties." *Id*.[9]

---

[8] The orphans' court concluded "some of the changes Ms. Manfredonia identified were immaterial." Adjudication at 22. For instance, the court noted that the fact that the "legal list" of investments (that existed at the time of the Trust's creation pursuant to the Fiduciaries Investment Act of 1949) has been abolished had no effect on any of PNC's administrative duties because the Trust instrument directed the trustees to "invest in all forms of property without restriction to investments authorized for Trustees." Deed of Trust, § 5(b). The orphans' court recognized that this language is "akin to a fiduciary's broad investment powers under the prudent investor standard" provided in 20 Pa.C.S. § 7203(b). Adjudication at 23.

[9] The court also concluded that the changes about which Ms. Manfredonia testified were inconsequential, and PNC failed to provide evidence of the value of its allegedly substantially different duties beyond the general "bromides" provided by Ms. Manfredonia. *Id*. at 23.

Our review of the record supports the orphans' court's conclusion. As noted above, the Trust is comprised of bonds, common stocks, and mutual funds which are administered by a third-party, not PNC. The Trust does not have any real estate holdings, small business or partnership interest, or loans receivable. As Mr. Payne testified, the distribution of income to the Trust's beneficiaries is only a "matter of math" with no need for PNC to exercise any discretion in administering the Trust. PNC is essentially asking this Court to reweigh the evidence to reach its desired conclusion. We decline to do so. Further, we discern no abuse of its discretion or error of law in the orphans' court's disposition.

**Issue 4 –  The orphans' court properly exercised its discretion in concluding that $142,000 was a reasonable principal commission as contemplated by Section 7768(d) of the Uniform Trust Act.**

PNC contends that because it based its request for compensation on its standard scheduled rates, and the parties stipulated that PNC's standard scheduled rates "arose in a competitive market," as referenced in 20 Pa.C.S. § 7768(d), the court erred in declining to award PNC's "presumptively reasonable" principal commission of approximately $216,000. PNC's Br. at 58. PNC further avers, without citation to relevant case law, that the court abused its discretion because the Objectors did not present compelling evidence to rebut the presumption of reasonableness. *Id*. at 59.

Pursuant to Section 7768 of the Uniform Trust Act, "[n]either a compensation provision in a trust instrument nor a fee agreement governs

- 16 -

compensation payable from trust principal unless it explicitly so provides." 20 Pa.C.S. 7768(a). Thus, where a trust instrument or a separate fee agreement is silent on the issue of principal compensation, a trustee is not barred from requesting such a fee. *In re Kennedy's Trust*, 72 A.2d 124, 126 (Pa. 1950). *See, e.g., Schwenk*, 490 A.2d at 432 (holding that a trustee was not entitled to a terminal principal commission where the trust instrument *explicitly limited* trustee compensation to income).

"A fiduciary's compensation depends upon the extent and character of the labor and the responsibility involved. Supervision of the amount of compensation is peculiarly within the discretion of the orphans' court. Unless such discretion is clearly abused the judgment will not be disturbed on appeal." *Breyer*, 370 A.2d at 1311 (citation omitted).

The Uniform Trust Act provides:

> **(d) Court authority.--**In determining reasonable compensation, the court may consider, among other facts, the market value of the trust and may determine compensation as a fixed or graduated percentage of the trust's market value. The court may allow compensation from principal, income or both and determine the frequency with which compensation may be collected. Compensation at levels that arise in a competitive market shall be presumed to be reasonable in the absence of compelling evidence to the contrary.

20 Pa.C.S. § 7768(d).

In considering whether requested interim principal compensation is reasonable, courts consider "the character of the services rendered, the responsibility incurred, and the zeal and fidelity with which the trust of the

accountants was carried." *In re Estate of Taylor*, 126 A. 809, 810 (Pa. 1924).

Here, the court concluded that, in light of the increase of over $600,000 of the Trust's fair market value between 2004 and 2017, and the significant increase in the distributions of Trust income made to the beneficiaries during this time period, "Accountant is entitled to an interim principal commission of $145,000 which is reasonable given the Trust's outstanding performance over the third accounting period." *Id*. at 30. The orphans' court also concluded that the Objectors presented compelling evidence[10] showing that PNC's request for $216,000 was unreasonable, stating:

> Accountant stated in the email it would seek a principal commission of $145,000, later describing the sum as a "gesture of good faith" and a way to "engender goodwill with the family." This gesture was not part of settlement negotiations or the like as the email predates this litigation by seven months.
>
> Accountant's magnanimity pleases the [c]ourt as it rarely sees such acts of *nobless oblige*. If Accountant believed $145,000 was a reasonable principal commission, why then the [c]ourt agrees. To hold otherwise means Accountant can seek cover behind Section 7768's presumption of reasonableness despite the fact it was prepared to accept a principal commission considerably lower than what its fee schedules would require of the Trust. The [c]ourt will not condone this tactic and finds Accountant's email compelling evidence of the unreasonableness of its requested principal commission.

---

[10] The orphans' court noted that, although there are several references to burdens of proof in the Probate, Estates, and Fiduciaries Code generally, Section 7768(d) is the only section that includes "compelling evidence to the contrary." Adjudication at 28-9 n.14.

Adjudication at 29.

We discern no abuse of the court's discretion in ordering an interim principal commission of $145,000, which is approximately 8.7% of the adjusted principal balance. In addition to the PNC email, the performance of the Trust, and the benefit that inured to the beneficiaries, the court also considered evidence, as noted above, that the administration of the Trust's income was "a matter of math" and that PNC is not required to provide extraordinary services in its administration of the Trust. *See* N.T. at 25, 38-39 (Testimony of Mikal Payne as on cross). We decline to reweigh the evidence. In light of the above, we conclude that the orphans' court properly exercised its discretion in granting an interim principal commission of $145,000.

### Issues 5 and 6– The orphans' court did not err in sustaining the objection to PNC's requested attorney's fees.

PNC next contends that the orphans' court erred sustaining the objection to PNC's request for attorneys' fees. PNC's Br. at 67. It avers that the court's finding—that "the defense of the [T]hird [A]ccount was an unnecessary expense due to the Accountant's impudent conduct"—is without support in the record. *Id*. We conclude this issue is waived because, beyond directing our attention to its October 10, 2018 letter, PNC has failed to provide citation to authority or a legal analysis.

An appellant must develop arguments in his brief with citation to the record and relevant authority. Pa.R.A.P. 2119(a). The Rules of Appellate

Procedure clearly state that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. ***Commonwealth v. Martz***, 232 A.3d 801, 811 (Pa. Super. 2020). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018). To do so would place this Court "in the conflicting roles of advocate and neutral arbiter." ***Commonwealth v. Williams***, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring). Therefore, an appellant waives any issue he fails to develop sufficiently. ***Sephakis v. Pa. State Police Bureau of Records***, 214 A.3d 680, 686-87 (Pa. Super. 2019). PNC failed to develop this issue in a meaningful way. PNC's failure to cite relevant legal authority and provide fact-specific legal analysis hampers this Court's review of the issues and, therefore, we are constrained to conclude that issues five and six are waived.

Having concluded the trial court properly exercised its discretion and committed no error in applying fundamental law, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2021