**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| IN RE: ESTATE OF SOPHIA M. KRASINSKI, A/K/A SOPHIA KRASINSKI A/K/A SOFIA KRASINSKY, LATE OF MORRISDALE, (COOPER TOWNSHIP) CLEARFIELD COUNTY, PENNSYLVANIA DECEASED ON 11/04/2006 | : : : : : : : : | No. 40 WAP 2018 |
| | : | Appeal from the Order of the Superior Court entered May 15, 2018 at No. 1289 WDA 2015, affirming in part, reversing in part and vacating in part the Order of the Court of Common Pleas of Clearfield County entered |
| APPEAL OF: PATRICIA KRASINSKI-DUNZIK | : : : : : | July 16, 2015 at No. 1707-0003, and remanding |
| | : : | ARGUED: April 9, 2019 |
| IN RE: ESTATE OF SOPHIA M. KRASINSKI A/K/A SOPHIA KRASINSKI A/K/A SOPHIA KRASINSKY LATE OF MORRISDALE (COOPER TOWNSHIP), CLEARFIELD COUNTY, PENNSYLVANIA DECEASED NOVEMBER 4, 2006 | : : : : : : : : | No. 41 WAP 2018 |
| | : | Appeal from the Order of the Superior Court entered May 15, 2018 at No. 1265 WDA 2015, affirming in part, reversing in part and vacating in part the Order of the Court of Common Pleas of Clearfield County entered |
| APPEAL OF: PATRICIA KRASINSKI-DUNZIK | : : : : : | July 16, 2015 at No. 1707-0003, and remanding |
| | : : | ARGUED: April 9, 2019 |


**OPINION**


**JUSTICE DONOHUE**                    **DECIDED: OCTOBER 31, 2019**

This discretionary appeal presents the Court with an opportunity to clarify the proper scope of Rule 342(a)(6) of the Pennsylvania Rules of Appellate Procedure, which provides for an appeal as of right from an order of the Orphans' Court Division that "determin[es] an interest in real or personal property." Pa.R.A.P. 342(a)(6). Pa.R.A.P.

342(c) further provides that the failure of a party to immediately appeal an order appealable under, inter alia, Rule 342(a)(6), constitutes a waiver of all objections to the order. Pa.R.A.P. 342(c).[1] Applying these rules to the case at bar, we conclude that

---

[1] Pa.R.A.P. 342(a) and (c) provide as follows:

**Rule 342. Appealable Orphans' Court Orders**

**(a) General rule.** An appeal may be taken as of right from the following orders of the Orphans' Court Division:

(1) An order confirming an account, or authorizing or directing a distribution from an estate or trust;

(2) An order determining the validity of a will or trust;

(3) An order interpreting a will or a document that forms the basis of a claim against an estate or trust;

(4) An order interpreting, modifying, reforming or terminating a trust;

(5) An order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship;

(6) An order determining an interest in real or personal property;

(7) An order issued after an inheritance tax appeal has been taken to the Orphans' Court pursuant to either 72 Pa.C.S. § 9186(a)(3) or 72 Pa.C.S. § 9188, or after the Orphans' Court has made a determination of the issue protested after the record has been removed from the Department of Revenue pursuant to 72 Pa.C.S. § 9188(a); or

(8) An order otherwise appealable as provided by Chapter 3 of these rules.

\* \* \*

**(c) Waiver of objections.** Failure to appeal an order that is immediately appealable under paragraphs (a)(1)–(7) of this rule shall constitute a waiver of all objections to such order and such objections may not be raised in any subsequent appeal.

Appellant Patricia Krasinski-Dunzik ("Dunzik") waived all objections to the orphans' court's order dated April 30, 2013 approving a private sale of land. Accordingly, we affirm the Superior Court's decision.

Sophia M. Krasinski (the "Decedent") died testate on November 4, 2006. Her will named Edward Krasinski (the "Executor")[2] as the executor of her estate. The Executor is one of the Decedent's four children, who also include Eleanor Krasinski ("Eleanor"), James Krasinski ("James"), and Dunzik. Decedent's will directed that each of her four children were equal beneficiaries of the residue of the estate after debts and funeral expenses were paid. Eleanor relinquished her twenty-five percent interest to Dunzik on January 9, 2013. The primary assets of the estate included three parcels of real estate: (1) twenty acres of property with an appraised value of $55,000 ("Johnny Hoover Place"); (2) a barn and ninety-five acres of property, including sixty-eight acres of coal rights, with an appraised value of $230,000 ("Wicks' Place"); and (3) a house, buildings, and approximately ninety-nine acres with an appraised value of $200,000 ("Homestead Place"). Dunzik and her husband constructed a residence, a barn, and appurtenances on Homestead Place and had lived there for many years at the time of Decedent's death.

On July 7, 2010, the Executor filed a petition to permit the private sale of real estate to heirs. In that petition, the Executor averred that Dunzik was objecting to the distribution of all three properties because it was her position she already owned them based on a

---

Pa.R.A.P. 342(a)(6), (c).

[2] Edward Krasinski was nominated by Decedent as Executor. However, he renounced his right to serve and his brother, James Krasinski, was initially appointed as personal representative and letters testamentary were issued to him. Thereafter, those letters testamentary were revoked and Edward Krasinski was appointed Executor.

prior oral agreement between herself and the Decedent. After argument and briefing, on March 22, 2011 the orphans' court granted the Executor's petition to permit the private sale of all of the real estate. Specifically, the orphans' court concluded, inter alia, that Dunzik had not produced a writing that satisfied the statute of frauds and thus lacked the legally required proof to support her claim that she owned the properties.

Dunzik and her husband then filed a civil complaint against the estate based upon the alleged oral contract with the Decedent. On December 24, 2012, after a nonjury trial, the trial court ruled that there was no enforceable oral contract between Dunzik and Decedent and dismissed the case. This trial court's order also lifted a stay on the orphans' court's prior order approving the private sale of the Decedent's lands. Dunzik did not appeal the trial court's rulings.

On February 8, 2013, the estate's attorney sent a letter to the four heirs explaining the process by which the private sale would occur. With respect to the Homestead Place property, the letter stated that if Dunzik and her husband did not purchase all of the property of Homestead Place, steps would be taken to ensure they could maintain ownership of the home and barn on the property. Specifically, the letter provided that "[t]his sale does not include the home and barn … and if [Dunzik] does not purchase [Homestead Place] an adjustment in real estate will have to be made to allow for the ground under those two buildings to be separately owned and assessed to [Dunzik and her husband]." Orphans' Court Opinion, 4/22/2015, at 9. The bidding took place one week later, on February 15, 2013. The Executor, James and his wife, and Dunzik attended, at which time Dunzik stated that she would not be bidding because she believed that she already owned the properties. She then left the meeting. In her absence, James

and his wife bid $230,000 for Wicks' Place. Edward bid $55,000 for Johnny Hoover Place. Edward, James and his wife jointly bid $120,000 for Homestead Place.

On March 7, 2013, the Executor petitioned the orphans' court to approve the sale of these properties to the residuary heirs for these amounts, attaching the proposed deeds to the three properties as exhibits. Contrary to the representation in the February 8, 2013 letter from the estate's attorney, the deed for Homestead Place did not include any provision permitting Dunzik and her husband to retain ownership of the house and barn. On March 14, 2013, Dunzik filed pro se objections to the petition, which did not include any objection relating to the sale of the properties. On April 30, 2013, the orphans' court, after argument, entered an order approving the sales of the three properties and authorizing the estate to issue the three deeds to the purchasers at the private sale.[3]

On May 30, 2014, the Executor filed a first and final accounting. Dunzik, through counsel, filed six objections, four of which related to the sales of real property approved pursuant to the April 30, 2013 order. Dunzik first objected to the manner in which the private sale was conducted, including a claim that the Executor and his brother James conspired to purchase the properties for themselves without competitive bidding, thus

---

[3] Specifically, the order provided as follows:

> AND NOW, this 30th day of 2013, on consideration of the foregoing REPORT AND RETURN OF PRIVATE SALE OF REAL ESTATE TO HEIRS, it is Ordered by this Court that the Report of Edward P. Krasinski, Executor of the estate of the above Decedent, is hereby approved in all regards and the properties described in Exhibits 1, 2, and 3 of said report shall be conveyed to the grantees in accordance with the terms set out in the Report.

Orphans' Court Order, 4/30/2013.

suppressing the sales prices. Dunzik requested the filing of an amended final accounting that set forth the true value of the real estate. Second, Dunzik objected to the failure to include a limiting condition regarding Petitioner's home, barn, and underlying land in the Homestead Place deed, as promised in the February 8, 2013 letter from the estate's attorney, and that the Executor and James had changed the terms of the sale without proper notice. Dunzik demanded that the estate provide her and her husband with a deed securing their ownership of the lands underneath their house and barn and all surrounding lands appurtenance to the same. Third, Dunzik objected to the placement of a right of way easement over the Homestead Place tract in favor of the Johnny Hoover Place tract, which she claimed increased the value of the Johnny Hoover property (purchased by the Executor). Dunzik insisted that a revised final accounting be prepared that included the correct values for the two properties. Fourth, Dunzik claimed that the Executor had sold lands to himself at artificially reduced prices, which were based upon faulty appraisals that, inter alia, did not include the value of the timber, subsurface rights and Marcellus Shale gas. As with the first and third claims, Dunzik requested that a revised final accounting include the true values of the properties for distribution purposes. *Id.* at 5-7.

By order and opinion dated April 22, 2015, the orphans' court denied these four objections,[4] concluding that pursuant to Pa.R.A.P. 342, Dunzik had waived them because she had not filed an appeal in the Superior Court from the April 30, 2013 order (approving the completion of the proposed sales) within thirty days of its entry.

---

[4] The orphans' court granted one of Dunzik's other objections. The court ruled that natural gas payments received by the estate for Homestead Place, in the amount of $39,536, were the property of Dunzik. The court order directed the filing of an amended accounting to remove the $39,536 from the estate. Orphans' Court Opinion, 4/22/2015, at 17-19.

> Pennsylvania Rule of Appellate Procedure 342, entitled Appealable Orphans' Court Orders, clearly states that an order from a decree of the [o]rphans' [c]ourt determining an interest in real property is immediately appealable. Failure to appeal such an order constitutes a waiver of all objections to such order and any objections may not be raised in a subsequent procedure. *See* Rule of Appellate Procedure 342(a)(6) and (c). Therefore, the claims set forth in the first four objections have been waived by [Dunzik] through her failure to file an appeal of this [c]ourt's [o]rder of April 30, 2013.

*Id.* at 8.

The orphans' court so ruled despite its acknowledgement that the estate had not followed "acceptable and legal process in conducting the sales" with respect to the Dunzik's house and barn. Orphans' Court Opinion, 4/22/2015, at 8. The court indicated that the excuses given by the Executor and the estate's attorney for not including language in the Homestead Place deed providing for the Dunziks' continued ownership of the land under their house and barn were "woefully inadequate."[5] The court insisted that the Executor had acted in his own interests as co-purchaser of Homestead Place, an act that "some may construe … to be fraud." *Id.* at 10. Nevertheless, although the orphans' court was of the view that "fundamental fairness dictates a different result," it held that Pa.R.A.P. 342 compelled it to conclude that Dunzik's four objections to the private sale had been waived for her failure to timely appeal.[6]

---

[5] The Executor testified that he was unaware of the relevant language in the estate lawyer's letter until the day of the sale. Orphans' Court Opinion, 4/22/2015, at 9. The estate's lawyer testified that he discussed the issue with the Executor and James, and that they decided to change the terms in the deed because they concluded that Dunzik, having left the sale meeting before its conclusion, was no longer interested in the property. *Id.*

[6] On May 4, 2015, Dunzik filed a motion for reconsideration, contending, inter alia, that: (1) the April 30, 2013 order approving the private sale was interlocutory, and (2) the Executor, James, and James' wife had removed a significant amount of timber from

By fiduciary deed executed, acknowledged and recorded on May 31, 2013, the Executor conveyed the Homestead tract to himself, James and his wife. In August, 2013, these three individuals joined in the filing of an action in ejectment against Dunzik, her husband and Eleanor (who has resided on Decedent's property her entire life). This action, seeking the removal of the two sisters from their residences, remains pending.

On appeal, the Superior Court issued an en banc decision on May 15, 2018 in which it, inter alia, affirmed the orphans' court's ruling that Dunzik had waived all objections to the estate's private sale of real estate by failing to appeal from the April 30, 2013 order. *In re Estate of Krasinski*, 188 A.3d 461, 469-70 (Pa. Super. 2018) (en banc). The Superior Court ruled that the orphans' court's April 30, 2013 order "finalized the sale of real estate by the Executor" and thus clearly "determine[d] an interest in real ... property." *Id.* at 469. Consequently, the Superior Court held that the orphans' court's April 30, 2013 order was appealable as of right pursuant to Pa.R.A.P. 342(a)(6) and Dunzik's failure to appeal within thirty days of its entry resulted in a waiver of all claims related to the sale pursuant to Pa.R.A.P. 342(c).[7] *Id.* at 469-70. Judge Shogan issued a dissenting opinion.

This Court granted allowance of appeal to consider the following issues:

(1)     Does Pa.R.A.P. [...] 342(a)(6), which provides for an immediate appeal as of right from Orphans' Court orders "...

Homestead Place. On May 13, 2015, the orphans' court granted Dunzik's motion for reconsideration and scheduled argument on these two issues. By order entered July 16, 2015, the orphans' court rescinded the May 13, 2015 order, construed Dunzik's motion for reconsideration as exceptions, and dismissed those exceptions. The orphans' court also dismissed exceptions filed by the Executor concerning ownership of the gas and oil rights to Homestead Place.

[7] The Superior Court further determined that the April 30, 2013 order was not a collateral order pursuant to Pa.R.A.P. 313. Neither of the parties appealed this ruling.

determining an interest in real or personal property[,"] also allow or require an immediate appeal from an order of the Orphans' Court permitting or denying the personal representative the authority to sell real or personal property, such that filing the appeal from the Order confirming the [f]irst [and] [f]inal account was deemed to be a waiver of those issues?

(2)  Did the Superior Court commit an error of law, and misconstrue Pa.R.A.P. [...] 342(a)(6) in its holding that an order confirming the sale of real property of a decedent's estate was an order determining an interest in real property, and that an appeal from such an order was waived if not filed within thirty [...] days of said order?

(3)  Did the Superior Court commit an error of law by misconstruing Pa.R.A.P. [...] 342(a)(6), and ignoring, or otherwise failing to address controlling authority encompassed by the Superior Court decisions and holdings in *In re Estate of Ash*, 73 A.3d 1287 (Pa. Super. 2013), and *In re Estate of Cherry*, 111 A.3d 1204 (Pa. Super. 2015)?

*In re Estate of Krasinski*, 198 A.3d 1045 (Pa. 2018). While set forth in three distinct formulations, at bottom these issues present a single question for this Court's consideration: did the orphans' court's April, 30, 2013 order determine an interest in real property in accordance with Pa.R.A.P. 342(a)(6), and, if so, did Dunzik's failure to appeal within thirty days result in a waiver of all claims related to the sale of real property pursuant to Rule 342(c). The proper interpretation of a rule presents a question of law and our standard of review is de novo. *Touloumes v. E.S.C. Inc.*, 899 A.2d 343, 346 n.4 (Pa. 2006). Our scope of review, to the extent necessary to resolve the legal question before us, is the entire record and is thus plenary. *Id.*

Prior to 1992, a "final order" for purposes of appeal was not precisely defined in the Pennsylvania Rules of Civil Procedure. Rather, the finality of an order was generally

governed by appellate court decisions holding that the order had a "final aspect" to it.[8]

The "final aspect" approach was useful for parties in orphans' court proceedings, as a large number of orders issue by these courts resolved specific issues, like the rights of beneficiaries and the disposition of real or personal property, but did not terminate the entire administrative proceeding. In 1992, however, this Court adopted Pa.R.A.P. 341, which defines a "final order" as one that disposes of all claims and of all parties. Pa.R.A.P. 341(b)(1). As a result of this change, many orphans' court orders that would have been appealable under the "final aspect" doctrine were no longer appealable, as only the order approving the final accounting disposes of "all claims and all parties." This new definition of "final order" proved to be problematic to orphans' court practice, including for example with respect to the disposition of real estate. Personal representatives (including executors), guardians and trustees had typically sought the finality of orphans' court approval of real estate transactions pursuant to section 548 of the Fiduciaries Act of 1949 (now section 3353 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 3353[9]).

---

[8] Pursuant to this approach, an order was deemed "final" if it (1) ended the litigation or disposed of the entire case; (2) effectively put a litigant "out of court"; or (3) precluded a party from presenting the merits of his or her claim to the trial court. *Bollinger by Carraghan v. Obrecht*, 552 A.2d 359, 361 (Pa. Commw. 1989).

[9] Sections 3311 and 3351 authorize a personal representative to sell the real and personal property of the decedent. 20 Pa.C.S. §§ 3311(a), 3351. Section 3353, entitled "Order of Court," provides that the orphans' court may issue orders authorizing personal representatives to do so:

> When the personal representative is not authorized to do so by this title or is denied the power to do so by the governing instrument, if any, or when it is advisable that a sale have the effect of a judicial sale, he may sell any real or personal property of the estate, including property specifically devised, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale,

Because after 1992 orders approving dispositions of real estate were no longer immediately appealable, the finality of such transactions remained uncertain until after the orphans' court had approved a final accounting for the entire estate. It was often difficult for a personal representative, given the uncertainties associated with potential future appeals, to obtain results consistent with the interests of the estate's beneficiaries.

As of 1992, Pa.R.A.P. 342 permitted interlocutory appeals as of right from orphans' court orders in only one circumstance: non-final orders of distribution. The rule further required that such an order was appealable only if "the lower court shall certify that the order is sufficiently definite to determine the substantive issues between the parties." *See In re Estate of Habazin*, 679 A.2d 1293, 1295 (Pa. Super. 1996), *abrogated by amendments to Pa.R.A.P 342*. In 2000, in part to address the difficulties just discussed, the Court amended Pa.R.A.P. 342 to include two additional types of orphans' court interlocutory orders appealable as of right: (1) orders "determining an interest in realty, personalty," and (2) an order determining the status of individuals or entities. *In re Estate of Sorber*, 803 A.2d 767, 769 (Pa. Super. 2002), *abrogated by amendments to Pa.R.A.P 342*. The revised rule continued to retain the requirement that the orphans' court certify the ruling as final before an appeal could be filed, modifying the language slightly to

lease, or exchange of any such property, under order of the orphans' court division of the county where letters testamentary or of administration were granted, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate.

20 Pa.C.S. § 3353.

require that the order "shall constitute a final order upon a determination of finality by the Orphans' Court Division."  *Id.*  In 2005, the rule was amended again as follows:

> **Rule 342.  Orphans' Court Orders Appealable.  Orders Determining Realty, Personalty and Status of Individuals or Entities.  Orders Making Distribution.**
>
> > An order of the Orphans' Court Division making a distribution, or determining an interest in realty or personalty or the status of individuals or entities, shall be immediately appealable:
> >
> > > (1) upon a determination of finality by the Orphans' Court Division, or
> > >
> > > (2) as otherwise provided by Chapter 3 of these rules.[10]

Pa.R.C.P. 342 (footnote added).

This Court addressed the application of this rule in *In re Estate of Stricker*, 977 A.2d 1115 (Pa. 2009).  In *Stricker*, two tracts of land constituted the bulk of the decedent's estate and the will provided that they be sold for the benefit of ten beneficiaries.  There were two co-executors, one of whom was the appellant.  One tract was subject to a third party's option to repurchase the property, which the third party had exercised. The remaining tract was put up for auction.  The appellant co-executor participated in the auction, but another bidder (John Fulton) entered a considerably higher bid.  The orphans' court directed the estate to deliver that tract to Fulton, but the appellant refused to cooperate in transferring either tract.  The orphans' court entered an order to compel the appellant to sign the agreement of sale transferring the tract purchased by Fulton, and

---

[10]  The only substantive change from the 2001 amendment was the addition of subsection (2), which clarified that orphans' court orders are immediately appealable under Pa.R.A.P. 311 (interlocutory appeals as of right) and Pa.R.A.P. 313 (collateral orders).  In 2005, this Court amended Pa.R.A.P. 311(a)(8) to permit an interlocutory appeal as of right from an order determining the validity of a will or trust.  Orphans' court orders determining the validity of a will or trust are now appealable pursuant to Pa.R.A.P. 342(a)(2).

did not certify any of its orders as final. The Superior Court refused to consider the appeal, concluding that the orphans' court's orders were interlocutory. We granted the appellant's petition for allowance of appeal to address whether the orders in question were final pursuant to Rules 341 and 342.

This Court ruled that the orders were interlocutory, as we decided that the orphans' court had not erred in refusing to certify its orders as final. Without setting any specific standard for what constitutes a final order for purposes of Pa.R.A.P. 342, we instead noted that the determination of finality should be left to the discretion of orphans' court judges:

> [Pa.R.A.P. 342] does not require that any particular class of orders be treated as final, but instead leaves the determination of finality of orders not disposing of all claims and all parties up to the Orphans' Court judge. Pa.R.A.P. 342(1). Certification under Rule 342 is wisely left to the discretion of the Orphans' Court [judges], who are in the best position to take the facts of the case into account when deciding whether an immediate appeal would be appropriate.

*Id.* at 1117-18.

The appellant argued that the orders were final because without an immediate appeal, the real property would be sold and his claims would be lost. We disagreed, finding a lack of finality because appellant had no claim to the properties.

> It is true that the real estate will no longer be available to [the appellant] once a sale to another party is accomplished. But [the appellant] was not bequeathed the tracts themselves. Instead, [the appellant] is entitled only to a share of the decedent's estate after it has been liquidated. Therefore, his claim that an immediate appeal is necessary to protect his interests fails. Indeed, [the appellant] has no greater rights with respect to this property than any potential buyer. Moreover, if [the Court] accepted [the appellant's] argument that any claim on or about property that might be sold during the probate process should be immediately appealable, the appellate court system would be flooded with such appeals

and the administration of decedents' estates would be unreasonably delayed.

A delay in review of the orders in this case will not result in the loss of any right in any of the parties because the real estate is not specifically devised under the will to any person, and the proceeds of sale will remain under the review and control of the Orphans' Court until confirmation of the final account. [A]n order is not final and appealable merely because it decides one issue of importance to the parties. Rather, for an order to be final and ripe for appeal, it must resolve all pending issues and constitute a complete disposition of all claims raised by all parties.

*Id.* at 1118 (citations and quotation marks omitted).

In an instructive concurring opinion, then-Justice (now Chief Justice) Saylor argued that Rule 342 should be revised to eliminate the requirement of a determination of finality before certain types of orphans' court orders could be appealed as of right. *Id.* at 1120 (Saylor, J., concurring). In particular, he disagreed that Pa.R.A.P. 342 should endow orphans' courts with essentially "standardless" discretion to determine whether its orders were final and thus immediately appealable. *Id.* In disagreeing with the majority's "categorical assessment regarding the wisdom of the rule in this regard," *id.* at 1119, then-Justice Saylor supported his contrary position as follows:

In my view, there are substantial arguments to be made that estate administration would be better served by a rule providing for the general appealability of estate-related orders determining property interests at least in the real property setting. Notably, the present "determination of finality" procedure does not closely align with the justifications for permitting immediate appeals (facilitating the prompt resolution of potential title disputes to benefit purchasers, the estate, and beneficiaries). Further, the vesting of absolute, standardless discretion in our orphans' courts yields the potential for disparate treatment. *Cf. Commonwealth v. Castillo,* 888 A.2d 775, 779 (Pa. 2005) (rejecting the exercise of appellate discretion to review issues on appeal where the appellant has failed to comply with the obligation to file a

> statement of matters complained of on appeal, where such
> discretion yields "inconsistent results and uneven justice").

*Id.* He also disagreed with the majority's contention that allowing immediate appeals from orders involving the disposition of real property would "flood" the appellate court system with appeals, noting that the majority offered no evidence to support such an eventuality. *Id.* at 1120. The determination of finality did not foreclose any appeals, but rather only delayed them. *Id.* at 1120-21. He requested that the appellate and orphans' court rules committees study and make recommendations to improve "the troubling implications of maintaining a system based on absolute, largely standardless discretion." *Id.* at 1121.

The rules committees plainly studied alternative improvements, as effective February 12, 2012, Rule 342 was substantially revised in two respects. First, the rule as revised includes additional types of orphans' court orders that are immediately appealable as of right, including for example subsection (a)(3), which permits the immediate appeal of an order interpreting a will or other relevant document that forms the basis of a claim asserted against the estate or trust. Pa.R.A.P. 342(a)(3). The recognition of orders "determining an interest in realty or personalty" as immediately appealable was retained without substantive modification. Now set forth in 342(a)(6), the rule provides that "[a]n appeal may be taken as of right from ... [a]n order determining an interest in real or personal property." Pa.R.A.P 342(a)(6). Subsection (c) was added to provide that "[f]ailure to appeal an order that is immediately appealable under paragraphs (a)(1)-(7) of this rule shall constitute a waiver of all objections to such order and such objections may not be raised in any subsequent appeal." Pa.R.A.P. 342(c).

Second, and of significant importance for present purposes, the requirement that the orphans' court designate an order as final before it becomes immediately appealable

was eliminated. In explaining the change, the Official Note to Pa.R.A.P. 342 states as follows:

> Experience has also proven that it is difficult to analogize civil litigation to litigation arising in estate, trust and guardianship administration. The civil proceeding defines the scope of the dispute, but the administration of a trust or estate does not define the scope of the litigation in Orphans' Court. Administration of a trust or an estate continues over a period of time. Litigation in Orphans' Court may arise at some point during the administration, and when it does arise, the dispute needs to be determined promptly and with finality so that the guardianship or the estate or trust administration can then continue properly and orderly. Thus, the traditional notions of finality that are applicable in the context of ongoing civil adversarial proceedings do not correspond to litigation in Orphans' Court.
>
> In order to facilitate orderly administration of estates, trusts and guardianships, the 2011 amendments list certain orders that will be immediately appealable without any requirement that the Orphans' Court make a determination of finality. Orders falling within subdivisions (a)(1)-(7) no longer require the lower court to make a determination of finality.

Pa.R.A.P. 342, Official Note.

The Superior Court applied the revised rule in *In re Estate of Ash*, 73 A.3d 1287 (Pa. Super. 2013). In *Ash*, the will at issue made specific cash bequests and directed that the remaining personal and real property be sold, with the proceeds to be divided among three residual beneficiaries. The appellant, Joseph Heit, was the executor and the other two beneficiaries were his brother, James Heit, and Duane Fetter. As executor, the appellant conveyed to himself one of the three tracts of land owned by the estate (Tract 1). The orphans' court set aside the sale, removed the appellant as executor, and appointed an administratrix in the appellant's place. Appellant did not appeal. *Id.* at 1288. Thereafter, Fetter indicated that he had entered an agreement with the decedent to

purchase an adjoining tract ("Tract 2"), and further agreed to purchase Tracts 1 and 3. Appellant filed a petition asserting that he was willing to buy Tract 1 if he could get an easement over Tract 2. The administratrix, however, decided to sell all three tracts to Fetter. The orphans' court agreed and entered an order authorizing the administratrix to sell the three tracts to Fetter. Appellant appealed.

The Superior Court ruled that the revisions to Pa.R.A.P. 342 had no effect on this Court's decision in *Stricker* and that, as such, the orphans' court's order authorizing the administratrix to sell the real property to Fetter was interlocutory:

> We do not believe the order before us is one of the appealable orders set forth by Rule 342, whether in Subsection (6) or otherwise. Consequently, we do not believe Subsection (6) and/or any other post[-]*Stricker* change(s) to Rule 342 negate *Stricker* and render the order before us appealable. We understand the effect of the instant order will be to allow the realty sale and, if the administratrix sells the tracts, Fetter will come to own them. Thus, if the sale is completed, the order will eventually lead to a change in the ownership interest of the realty. **Nevertheless, the Orphans' Court decision now on appeal did not involve the court having to resolve some dispute about who had or has an interest in the tracts:** The estate obviously owns them. The court's decision was about ... the propriety of her plan to reduce the estate assets to cash by sale to a particular party, the goal being to distribute the sale proceeds in accordance with the will. The court's decision was not about determining an interest in the subject realty. Accordingly, *Stricker* controls this case.

*Id.* at 1289-90 (emphasis added).

The Superior Court relied upon its decision in *Ash* in deciding *Estate of Cherry*, 111 A.3d 1204 (Pa. Super. 2015). In *Cherry*, the decedent's will named twenty-three beneficiaries, including her local church, with the church to receive the residue of the estate. *Id.* at 1206. The church, seeking to receive the real estate as the residue, offered to contribute funds to allow for the payment of the cash bequests. *Id.* The executor,

however, indicated that such a procedure was contrary to the terms of the will and moved forward to sell the real property. *Id.* Upon petition by the church, the orphans' court entered an order indicating that it would not authorize a sale of the real property and would enjoin future efforts to do so. *Id.* On appeal, the Superior Court affirmed on two grounds. First, the order did not determine an interest in real property because it did not approve an actual sale of the property, and second, even if one might speculate that the orphans' court would never permit the sale of the real property (thus effectively permanently determining ownership of the property), the orphans' court's order was interlocutory under *Ash* because it did not "resolve some dispute about who had or has an interest in the tracts" at issue. *Id.* at 1210-11 (quoting *Ash*, 73 A.3d at 1290).

With this background to the rule in mind, we turn to consideration of the case at bar. To begin, we agree with Dunzik that the Superior Court's decision in this case is fundamentally inconsistent with its prior decisions in *Ash* and *Cherry*. The majority in the present case concluded that the orphans' court's April 30, 2013 order "finalized the sale of real estate by the Executor" and thus clearly "determine[d] an interest in real ... property." *Krasinski*, 188 A.3d at 469. Unlike in *Ash* and *Cherry* (to which the majority in this case did not even cite), the court did not follow *Stricker*'s requirement that the orphans' court's order must resolve a "dispute" between the parties regarding who owned an interest in the real estate in question to make it immediately appealable. Instead, the majority ruled that the orphans' court's order, by approving the sale of the three tracts in question, "determined an interest in real property," namely ownership of the real estate at issue. *Id.* The majority further noted that Dunzik was aware that her claims of ownership to the properties would be lost upon the finalized sale, and thus any continuing ownership

interest she had in those properties would be lost upon its completion absent an appeal seeking a reversal or modification of said order. *Id.* Because it was immediately appealable as of right, her failure to appeal the April 30, 2013 order resulted in waiver pursuant to Rule 342(c) and she could not obtain relief on her later claims related to the private sale. *Id.* at 469-70.

In contrast, in her concurring and dissenting opinion, Judge Shogan relied upon the reasoning in *Ash*. She reasoned, in accordance with *Ash*, that an order directing the sale of real estate that is not specifically devised to a particular person is not appealable under Rule 342(a)(6) because it does not determine an interest in property, since "the estate obviously owned the property." *Id.* at 478 (Shogan, J., concurring and dissenting). As a result, Judge Shogan concluded as follows:

> [A]s in *Ash*, the purpose of the April 30, 2013 order was not to resolve some dispute about who had an interest in the Property; that issue was determined in favor of the Estate prior to the private sale. Order, 3/22/11; Order, 12/24/12. Rather, the April 30, 2013 order was about approving the executor's "plan to reduce the estate assets to cash by sale to a particular party, the goal being to distribute the sale proceeds in accordance with the will." *Ash*, 73 A.3d at 1290. Thus, contrary to the Majority's conclusion, the orphans' court's decision was not about determining an interest in real property; it was about achieving distribution of the estate equally to Sophia's children. Accordingly, *Stricker* and *Ash* control this case.

*Id.*

We conclude that the Superior Court's majority correctly interpreted and applied Pa.R.A.P. 342(a)(6). By its express terms, this rule applies to any orphans' court order that determines an interest in real or personal property, without regard to whether it resolves a dispute over ownership or whether its purpose is to achieve a fair distribution

of the proceeds of an estate. In the vast majority of cases, the applicability of Pa.R.A.P. 342(a)(6) will be clear from the face of the order – if it determines an interest in real or personal property it is appealable as of right and the failure to file an immediate appeal will result in waiver pursuant to Pa.R.A.P. 342(c). Our prior decision in *Stricker* has no continuing vitality with respect to the application of Pa.R.A.P. 342(a)(6), as the lack of immediate appealability in that case was based solely and exclusively upon the orphans' courts' determination that its order was not final. The revisions to Pa.R.A.P. 342 eliminated the requirement of judicial declarations of finality and thus abrogated *Stricker*. Because *Ash* and *Cherry* relied upon the reasoning in *Stricker*, those cases must also be disapproved.[11]

---

[11] In his Concurring Opinion, Justice Dougherty disagrees with the decision to disapprove of *Stricker*, *Ash* and *Cherry* on the grounds that those cases involved orders approving "future" sales of real estate (or a refusal to permit a future sale) while the order in the present case approved a "prior" sale of real estate. Concurring Op. at 2. However, no such factual distinction exists. Properly understood, the orphans' court's March 22, 2011 order merely permitted the Executor to proceed with efforts to sell the estate's real estate, and to this end the Executor conducted a bidding process to identify specific buyers for each property. The March 22, 2011 order did not determine any interest in the estate's real property, as no interests were determined until after completion of the bidding process. To the contrary, throughout the bidding process the estate retained its exclusive interests in the three properties, and the bidding process had no impact on the estate's continued interests in these properties.

After the bidding process was finalized, on March 7, 2013 the Executor petitioned the orphans' court to approve the sale of the properties to the buyers and at the prices determined in the bidding process. After argument on the petition, the orphans' court, pursuant to its April 30, 2013 order, approved the sale of the properties to the specifically identified buyers, thereby determining an interest in those properties. The sales could not, and did not, take place until they were approved by the orphans' court. Thus, as in *Stricker*, *Ash* and *Cherry*, the orphans' court was ruling on an event to take place in the future, i.e., after the entry of the April 30, 2013 order.

In all fairness to the Superior Court panels in *Ash* and *Cherry*, as well as to Judge Shogan in relying on *Ash*, both recognized that the decision to continue to follow *Stricker* in light of the revisions to Pa.R.A.P. 342 was a difficult one, noting that if "the changes to Rule 342 were indeed meant to abrogate *Stricker* and … to transform an order such as the one before us into an order determining an interest in realty under Subsection (6), that pronouncement should be made by the Supreme Court." *Ash*, 73 A.3d at 1290 n.5; *Cherry*, 111 A.3d at 1210. We make that pronouncement here. In adopting the revisions to Pa.R.A.P. 342, we effectively adopted the position set forth in the concurring opinion in *Stricker* – which called for the elimination of the requirement of a determination of finality as a means to provide for "the general appealability of estate-related orders determining property interests… ."[12] *Stricker*, 977 A.2d at 1120 (Saylor, J., concurring).

---

[12] In *Estate of Plance*, 175 A.3d 249 (Pa. 2017), this Court previously explained:

> Prior to the most recent revision, [Rule 342] "[did] not require that any particular class of orders be treated as final, but instead [left] the determination of finality of orders not disposing of all claims and all parties up to the Orphans' Court judge." *In re Estate of Stricker*, 602 Pa. 54, 977 A.2d 1115, 1118 (2009). Concurring in *Stricker*, then–Justice, now Chief Justice, Saylor questioned the prudence of this rule, as the case-by-case determination of finality procedure could lead to inconsistent results in different Orphans' Courts, and could cause undue delays in estate administration. Justice Saylor opined that "allowing appeals as of right most frequently would result in a net benefit." *Id.* at 1121 (Saylor, J., concurring). Following Justice Saylor's recommendation in *Stricker*, Rule 342 was revised to provide for appeals as of right for specified categories of Orphans' Court orders. *See* Pa.R.A.P. 342(a). The rule explicitly states that objections to such orders must be raised in an immediate, timely appeal, on pain of waiver. *See* Pa.R.A.P. 342(c).

*Id.* at 269.

Such a rule of general appealability of these types of orders will best serve estate administration, as immediate appeals will, among other things, facilitate transfers of property in a manner favorable to beneficiaries by assuring the certainty of the title acquired by purchasers (rather than generating clouds on title when an appeal is delayed, sometimes for years, until the closing of the estate). *Id.* Moreover, the current text of the rule does not include any of the obstructions to immediate appealability created by *Stricker, Ash* and *Cherry.* Every orphans' court order determining an interest in real or personal property, without exception, is immediately appealable as of right.

The order of the Superior Court is affirmed.

Chief Justice Saylor and Justices Todd, Wecht and Mundy join the opinion.

Justice Dougherty files a concurring opinion in which Justice Baer joins.