J-A15010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE MATTER OF THE ESTATE OF ERIC S. WAITE | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LISA D. WAITE | : : | No. 1396 WDA 2021 |

Appeal from the Order Entered November 4, 2021
In the Court of Common Pleas of Jefferson County Civil Division at No(s):
OC 68-2021

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                **FILED: SEPTEMBER 20, 2022**

Lisa D. Waite ("Appellant") appeals from the order that granted the petition for settlement and distribution of funds filed by Appellees Whitney L. Basinger ("Whitney") and James S. Waite ("James") and directed Appellant to pay into the estate of Eric S. Waite ("the decedent") the lesser of $510,000 or the amount of the growth realized in the decedent's credit union accounts during the date she became the accounts' beneficiary.  We affirm.

Whitney and James are the children of the decedent, who had owned a working farm.  In February 2014, while Appellant was married to James, the decedent signed a power of attorney ("POA") making Appellant his agent.  That same day, the decedent made Appellant the beneficiary of his credit union checking and savings accounts pursuant to the Multiple-Party Accounts Act ("MPAA"), 20 Pa.C.S. §§ 6301-6306.  Shortly thereafter, the decedent became a resident at a personal care home and decided to sell his farm and

equipment. The proceeds of more than $160,000 were placed in the credit union savings account at the decedent's direction. Appellant and James divorced in October 2016. Although Appellant did not inform the decedent of the divorce, she continued to serve as his POA. Meanwhile, the credit union accounts continued to grow through the addition of the decedent's pension and other deposits, as most of his expenses were covered by insurance.

The decedent died on February 7, 2018. Appellant promptly submitted to probate the decedent's January 2014 will and November 2014 codicil, which named Appellant as executor, and she received letters testamentary. Pursuant to the will, nominal bequests were to go to several individuals, but the residue of the estate was to be distributed in equal shares to Whitney, James, and Appellant. After James inquired of Appellant in February 2018 about the value of the decedent's estate, he learned for the first time that Appellant, rather than the estate, was the sole beneficiary of the credit union accounts, and that Appellant was claiming the more than $560,000 in balances thereof for herself.[1]

Whitney and James filed a petition seeking, *inter alia*, that the court rescind Appellant's designation as a beneficiary of the credit union accounts and require her to remit all funds from the accounts to the estate based upon alleged undue influence and violation of her duties pursuant to the POA.

---

[1] Appellant's September 24, 2018 accounting indicated that the net value of the estate, sans the credit union accounts, was just over $7,000.

Following a hearing, the orphans' court found that Appellant did not exert undue influence over the decedent, but that she had violated her POA duties. Specifically, the orphans' court determined that, since the money in the credit union accounts was in effect her money, Appellant *de facto* co-mingled her assets with those of the decedent. Further, although Appellant knew that the decedent's estate plan was to distribute his assets equally among Whitney, James, and Appellant, Appellant never objected to the decedent's instructions to place funds, including the proceeds of the sale of the farm, into the credit union accounts. Nor did she inform Whitney or James, who was then still her husband, that she was the accounts' beneficiary. Moreover, once Appellant and James divorced, a fact that she never shared with the decedent, Appellant effectively ensured that James would realize no benefit from the decedent's estate. *See* Orphans' Court Opinion, 1/11/19, at 7-8.

Accordingly, the orphans' court entered an order that provided in pertinent part as follows:

> 2. Whereas [Appellant] abused her power and authority as the decedent's [POA], . . . she shall, within the next fifteen days, take whatever steps are necessary to restore the decedent's checking and savings accounts to his estate for distribution.
>
> 3. [Appellant] shall, within the next thirty days, submit a full accounting with respect to the decedent's deposit accounts from the date she became his [POA].
>
> 4. If [Whitney and James] do not file objections to that accounting within ten days of receipt, [Appellant] shall prepare an amended First and Final Account. . . .

Order, 1/11/19 (cleaned up).

- 3 -

Appellant appealed the order to this Court in 2019, claiming, *inter alia*, that the orphans' court erred in: (1) finding that Appellant violated her POA duties such that Decedent's designation of her as beneficiary was invalid; and (2) not finding that Appellant was the owner of the credit union accounts.[2] This Court construed these arguments to be that: (1) Appellant faithfully performed her duties as POA and, even if she did not, "the proper remedy was a surcharge and not the rescission of the beneficiary designation of the accounts," **In re Matter of Estate of Waite** ("**Waite I**"), 157 WDA 2019 (Pa.Super. Feb. 24, 2020) (nonprecedential decision at 16); and (2) Appellant had a statutory right of survivorship in the credit union accounts pursuant to the MPAA since there was no clear and convincing evidence that Decedent had a contrary intent. **Id**. (nonprecedential decision at 23).

This Court found no merit in either argument. As to the first issue, we concluded that the certified record supported the determination of the orphans' court that Appellant breached her duties under the POA by operating under a conflict of interest, and that a surcharge is an appropriate remedy for such a breach. **Id**. (nonprecedential decision at 20) ("Surcharge is the penalty

---

[2] Appellant also contended that the orphans' court erred in granting relief on a theory not raised in the petition filed by Whitney and James. We rejected that as a basis for disturbing the ruling of the orphans' court, finding that "even if Whitney and James failed to plead that Appellant breached the POA based on a conflict of interest or commingling assets, the trial court was entitled to consider the evidence and theories raised by Whitney and James at trial." **In re Matter of Estate of Waite** ("**Waite I**"), 157 WDA 2019 (Pa.Super. Feb. 24, 2020) (nonprecedential decision at 14-15).

for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." (cleaned up)). Accordingly, this Court held:

> Following our review, we conclude that the record supports the trial court's finding that Appellant acted in a manner as to create a conflict of interest under 20 Pa.C.S. § 5601.3(b)(2).[3] Furthermore, we find no abuse of discretion or legal error in the trial court's determination that Appellant ultimately placed her own self-interests ahead of those of the decedent. Under these circumstances, we find no basis to disturb the trial court's decision to direct Appellant to restore the credit union accounts to the decedent's estate for distribution as a surcharge for the conflict of interest.

*Id*. (nonprecedential decision at 23) (citations omitted).

Likewise, this Court determined that the MPAA presented no barrier to the orphans' court's imposition of a surcharge. We observed that § 6304 of the MPAA provides as follows in relevant part:

> **(b) Trust account.**—At the death of the trustee or the survivor of two or more trustees, any sum remaining on deposit belongs to the person or persons named as beneficiaries, if surviving, or to the survivor or survivors of them if one or more die before the trustee or last surviving trustee, unless there is clear and convincing evidence of a contrary intent; if two or more beneficiaries survive, there is no right of survivorship in event of death of any beneficiary thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between them.

---

[3] That portion of the statute defining a POA agent's duties requires agents to "[a]ct so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest." 20 Pa.C.S. § 5601.3(b)(2).

> **(c) Other cases.**—In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than that the rights of the decedent become part of his estate.
>
> **(d) Change by will prohibited.**—A right of survivorship arising from the express terms of an account or under this section, or a beneficiary designation in a trust account cannot be changed by will.

*Id*. (nonprecedential decision at 23-24) (quoting 20 Pa.C.S. § 6304) (cleaned up). We noted that there was no indication in the record that the decedent's accounts were held "as trustee for" Appellant, and that, even if the accounts were trust accounts pursuant to the MPAA such that Appellant became the presumptive owner upon the decedent's death, the MPAA did not preclude the orphans' court from surcharging Appellant based upon the conflict of interest. *Id*. (nonprecedential decision at 25-26).

Ruling that none of Appellant's arguments merited relief, this Court affirmed in its entirety "the order requiring Appellant to restore the decedent's checking and savings accounts to his estate for distribution." *Id*. (nonprecedential decision at 26).

The author of the instant memorandum filed a concurring statement, agreeing that the order of the orphans' court should be affirmed because "there was record support for the trial court's finding that Appellant's personal interests may have affected her ability to act impartially in [the decedent]'s best interest and preserve his estate plan, especially with regard to the credit union accounts." *Id*. (Bowes, J. concurring statement at 1). The concurrence,

however, opined that there was no legal support for the finding of the orphans' court that Appellant's designation as a beneficiary of the credit union accounts amounted to comingling of funds because, pursuant to the MPAA, Appellant had no interest in the accounts during the decedent's lifetime. *Id*. (Bowes, J. concurring statement at 2).

Appellant filed an application for reargument *en banc*, suggesting that the panel overlooked or misapprehended both the law regarding the duties of a POA agent and conflict of interest, and the facts concerning the decedent's intent. This Court opted to grant panel reconsideration and withdrew the *Waite I* memorandum and concurring statement.

Upon reconsideration, this Court did not alter its holding as to Appellant's conflict of interest. Rather, we stated the precise same ruling on that issue:

> Following our review, we conclude that the record supports the trial court's finding that Appellant acted in a manner as to create a conflict of interest under 20 Pa.C.S. § 5601.3(b)(2). Furthermore, we find no abuse of discretion or legal error in the trial court's determination that Appellant ultimately placed her own self-interests ahead of those of the decedent. Under these circumstances, we find no basis to disturb the trial court's decision to direct Appellant to restore the credit union accounts to the decedent's estate for distribution as a surcharge for the conflict of interest.

*In re Matter of Estate of Waite* ("*Waite II*"), 260 A.3d 143 (Pa.Super. 2021) (nonprecedential decision at 23) (citations omitted).

However, this Court reached a different conclusion about the orphans' court's application of the MPAA. Specifically, we ruled that the orphans' court

- 7 -

misapplied the MPAA by failing to respect Appellant's presumptive right of ownership over the accounts in the face of a record lacking clear and convincing evidence that the decedent did not intend for Appellant to have a right of survivorship over the accounts. As such, we concluded that "the [orphans'] court erred by applying a surcharge against Appellant pursuant to the MPAA." *Id*. (nonprecedential decision at 28).

In sum, we stated our decision as follows:

> As discussed herein, we agree with the [orphans'] court's determination that Appellant had a conflict of interest under the POA which was supported by the record and free of legal error. However, the [orphans'] court erred by applying a surcharge against Appellant pursuant to the MPAA. Clear and convincing evidence of the decedent's intent in the record establishes that Appellant is the beneficiary of the credit union accounts at issue. Further, the trial court found that Appellant did not unduly influence the decedent when he signed the POA or when he designated Appellant as the beneficiary of the credit union accounts, nor did the trial court find fraud. For these reasons, **we reverse the part of the [orphans'] court order directing Appellant to restore the accounts at issue to the decedent's estate for distribution and affirm the remainder of the order**.

*Id*. (nonprecedential decision at 28-29) (emphasis added).

The author of the instant memorandum filed a concurring and dissenting memorandum, opining that this Court's ruling in *Waite II* was unclear:

> I believe that the effect of the Majority's decision is an affirmance of the [orphans'] court's order surcharging Appellant and directing her to place the credit union funds into the estate. However, since in my view, the [orphans'] court did not run afoul of the MPAA or invalidate Appellant's status as beneficiary of the credit union accounts, there is nothing to reverse. Nor can I conceive of any relief to which Appellant would be entitled on that score. The [orphans'] court concluded that the credit union funds belonged

to Appellant, but due to the conflict of interest, it subjected her to surcharge by ordering her to place her funds in the estate.

Accordingly, I concur in the Majority's memorandum affirming the [orphans'] court's finding that Appellant acted in a manner as to raise a conflict of interest and that surcharge was a proper remedy. As I do not construe the [orphans'] court's decision as disregarding the MPAA and invalidating Appellant's beneficiary status on the credit union accounts, I dissent from the Majority's decision reversing the trial court on that basis. I would simply affirm the trial court's order *in toto*.

*Id*. (Bowes, J. concurring and dissenting memorandum at 3).[4]

Whitney and James filed a motion for clarification, asking the panel to indicate more precisely whether this Court's holding was that the orphans' court properly assessed a surcharge against Appellant in an amount equal to the value that she received from the credit union accounts, such that on remand the orphans' court was permitted to order the payment to the estate on remand. *See* Motion for Clarification, 7/29/21, at ¶¶ 10-12. Appellant answered the motion with a claim that it was filed too late and that, in any event, there is no need for clarification because this Court's decision was "clear on its face." Answer to Motion for Clarification, 8/2/21, at 4. This Court denied the motion as untimely.

Back in the orphans' court, Whitney and James filed a petition for settlement and distribution of funds, asking the orphans' court "to apply to

---

[4] The Majority declined to address the concurring and dissenting memorandum to either confirm or deny the accuracy of its construction of the Majority's holding as allowing Appellant to be surcharged for her breach of fiduciary duty despite the fact that she took ownership of the accounts pursuant to the MPAA.

[Appellant] a surcharge in the amount of $510,000.00 as the appropriate penalty for breaching her fiduciary duties as the decedent's [POA]." Orphans' Court Opinion, 11/4/21, at 1 (cleaned up). Appellant "filed both an answer to the petition and her own motion for release of funds wherein she prayed for an order directing that all the funds in the [credit union] accounts be made available solely to her and her attorney for immediate withdrawal." *Id*. (cleaned up). As the orphans' court observed, "[b]oth prayers for relief, as further elucidated through written and oral arguments, purport[ed] to be in concert with the Superior Court memorandum filed [in *Waite II*]." *Id*.

The orphans' court, noting its "unqualified duty to faithfully execute the Superior Court's precise and unambiguous dictates," determined that this Court's order in *Waite II* was "not clear and definitive." *Id*. at 2. From its examination of the Majority memorandum in its entirety, the orphans' court agreed with Whitney and James that *Waite II*'s holding was that, while the MPAA prevented it from altering "Appellant's beneficiary status absent clear and convincing evidence that the decedent intended otherwise," it was permissible to surcharge Appellant in the amount of the increase in value of the accounts during her conflicted tenure as POA as a penalty for her breach of fiduciary duty. *Id*. at 3. Accordingly, the court entered an order denying Appellant's motion for release of funds and directing Appellant to "pay to the estate $510,000 or an amount equal to the subject accounts' growth

beginning from the date when the decedent made her [his] beneficiary, whichever is less." Order, 11/4/21.

Appellant filed a timely notice of appeal,[5] and both she and the orphans' court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our determination:

> I.    Did the [orphans'] court fail to apply correctly, and fail to follow the conclusion and mandate of [**Waite II**], and err in denying Appellant's motion for release of funds to her?
>
> II.    Did the [orphans'] court err in granting relief to Appellees which was precluded by [**Waite II**], not requested previously by Appellees, and unfounded in the record?

Appellant's brief at 4 (cleaned up).

We address Appellant's issues together, beginning with a review of the pertinent legal precepts. "When reviewing an order entered by the orphans' court, the decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." **Tr. Under Deed of Wallace F. Ott**, 271 A.3d 409, 416 (Pa.Super. 2021) (cleaned up).

This Court has explained the duty of a trial court upon the remand of a case as follows:

---

[5]  Appellant claims that the November 4, 2021 order is appealable both as a final order pursuant to Pa.R.A.P. 341 and as an orphans' court order determining an interest in real or personal property pursuant to Pa.R.A.P. 342(a)(6). Although the order does not appear to be final, as it contemplates further proceedings, namely the determination of the precise amount of the surcharge, we agree that Rule 342(a)(6) establishes jurisdiction.

Where the direction contained in the mandate of the appellate court is precise and unambiguous, it is the duty of the trial court to carry it into execution without looking elsewhere for authority to change its meaning or direction. Under the law of the case doctrine, the trial court must. . . strictly comply with that mandate. The trial court cannot modify, alter, amend, set aside or in any way disturb or depart from this Court's judgment.

*Koch v. Harshaw*, 655 A.2d 1011, 1013 (Pa.Super. 1995) (cleaned up).

The orphans' court, concluding that the *Waite II* directive was unclear, explained its interpretation of this Court's mandate:

Yes, Superior Court reversed the part of the [orphans'] court's order directing [Appellant] to restore the accounts at issue to the decedent's estate for distribution. After noting that the essence of this Court's decision was that her actions had created a conflict of interest that impaired her ability to act impartially, however, it first found no basis to disturb the trial court's decision to direct her to restore the credit union accounts to the decedent's estate for distribution as a surcharge for the conflict of interest. The subsequent reversal did not undo that pronouncement. It did not absolve [Appellant] of the obligation to restore to the estate the **value** of the accounts. All it did, in consideration of the MPAA, was protect her beneficiary designation on the accounts themselves, thereby preventing [the orphans' court] from ordering her to physically transfer the actual accounts, as opposed to the bulk of the money comprising them, to the decedent's estate.

To reformulate Superior Court's ultimate directive, then, this court believes the majority was saying, "The order of the trial court is reversed pursuant to the MPAA insofar as it cannot alter Appellant's beneficiary status absent clear and convincing evidence that the decedent intended otherwise but is affirmed insofar as it directs Appellant to pay into the estate as a surcharge for breaching her fiduciary duties as the decedent's POA the full amount by which the subject accounts increased from the date she became POA and the accounts' beneficiary."

Orphans' Court Opinion, 11/4/21, at 3 (cleaned up, emphasis in original).

Appellant argues that the orphans' court erred in so ruling because "there was no ambiguity in [*Waite II*], which made clear that it had taken into account the POA analysis in nonetheless concluding that the subject funds were [Appellant]'s and that the [orphans'] court's award of a surcharge was error." Appellant's brief at 13. Appellant maintains that "[t]he history of the case makes clear that the intent and purpose of [*Waite II*] was to reverse the [orphans'] court's holding that a surcharge of [Appellant] was proper." *Id*.

Appellant misconstrues our ruling in *Waite II*. To reiterate, *Waite II*'s mandate was as follows: "we reverse the part of the [orphans'] court order directing Appellant to restore the accounts at issue to the decedent's estate for distribution and affirm the remainder of the order." *Waite II*, *supra* (nonprecedential decision at 29). As such, *Waite II* struck only ¶ 2 of the January 11, 2019 order, which required Appellant "to restore the decedent's checking and savings accounts to his estate for distribution." Order 1/11/19, at ¶ 2.

As ¶ 2 required Appellant to relinquish the entirety of the credit union accounts, not merely the growth realized after the day on which Appellant became both the decedent's POA and the accounts' beneficiary, it fully negated the decedent's choice to make her the beneficiary pursuant to the MPAA, rather than merely penalizing Appellant for her breach of fiduciary duty. Since the evidentiary record did not satisfy the MPAA's requirements for

- 13 -

divesting Appellant of ownership of the credit union accounts, we reversed the order insofar as it made the accounts assets of the estate rather than the property of Appellant.

However, in reversing that portion of the order that required Appellant to "restore the decedent's checking and savings accounts to his estate for distribution," we did **not** indicate that imposition of **any** surcharge was prohibited. On the contrary, we indicated that the record supported the imposition of a penalty against Appellant for her breach of duty in acting as Appellant's agent although she had a conflict of interest. Accordingly, *Waite II* did not strike, but rather expressly affirmed the remainder of the January 11, 2019 order, including ¶ 3 requiring Appellant to give full accounting of the credit union accounts within thirty days, and ¶ 4 directing her to prepare an amended First and Final Account. If Appellant's interpretation of *Waite II* as precluding the orphans' court from imposing any surcharge were correct, there would have been no reason for this accounting and no cause to amend the existing First and Final Account that indicated that the estate had a net value of $7,049.40. *See* First and Final Account, 9/24/18, at 3. Thus, this Court's affirmance of ¶¶ 3 and 4 plainly contemplated that Appellant would have to account for her breach of fiduciary duty and that the amount of the estate would change after Appellant paid a surcharge into the estate.

Indeed, given our express indication that the imposition of a surcharge for Appellant's breach of fiduciary was proper, and our affirmance of ¶¶ 3 and 4 of the order, the only reasonable interpretation of **Waite II**'s judgment is that our rejection of a surcharge in the form of divesting Appellant of ownership of the accounts did not preclude the trial court from imposing a surcharge in the form of a monetary sanction commensurate with her breach of fiduciary duty. Appellant's reading of **Waite II**, which ignores our approval of a surcharge for her breach of the POA and our express affirmance of ¶¶ 3 and 4 is patently unreasonable. The interpretation of the orphans' court, on the other hand, effectuates the entirety of this Court's prior ruling.

In her last argument, Appellant assails the amount of the surcharge, lamenting that Whitney and James "never requested that sum before filing their petition for settlement, offered no evidence to support it, and no record was ever made to substantiate it." Appellant's brief at 28. Indeed, Appellant observes that the orphans' court acknowledged that it did not know whether the sum of $510,000 was accurate as the amount of growth in the accounts during Appellant's tenure as the decedent's POA. **Id**. at 27 (citing Orphans' Court Opinion, 11/4/21, at 3 n.1). Rather, it trusted "that the parties can ascertain that number with little difficulty." **Id**. Therefore, Appellant contends that it was error to grant the relief.

We are unpersuaded that relief is due. While Whitney and James asked the orphans' court to mandate that Appellant pay $510,000, the court instead

ordered her to pay the lesser of that amount or "an amount equal to the subject accounts' growth beginning from the date when the decedent made her [his] beneficiary[.]"  Order, 11/4/21, at ¶ 1.  If the account realized less growth than that while she improperly managed it under a conflict of interest, then Appellant will pay less than $510,000.  If the accounts grew by more than that amount, she will not be required to pay more than the $510,000 that Whitney and James requested.  The exact amount of the surcharge remains open.

The reason that the record does not reveal the exact amount at this stage is because Appellant has not yet filed the accounting of the credit union accounts mandated by ¶ 3 of the January 11, 2019 order of the orphans' court, a directive that this Court affirmed in *Waite II*.  If any dispute about the amount remains after the accounting is provided to Whitney and James, the orphans' court will adjudicate it and that ruling may serve as fodder for the next appeal in this case.

For the foregoing reasons, we conclude that the orphans' court's November 4, 2021 order is wholly consistent with this Court's judgment in *Waite II* and that Appellant has presented no grounds for us to disturb it.

Order affirmed.

J-A15010-22

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2022